## ATLANTIC COAST LINE RAILROAD CO. ET AL. *v.* UNITED STATES ET AL.

No. 88. Argued December 7, 1931.—Decided January 4, 1932.

*Messrs. F. B. Grier* and *Carl H. Davis,* with whom *Mr. M. G. McDonald* was on the brief, for appellants.

*Assistant to the Attorney General O'Brian,* with whom *Solicitor General Thacher* and *Messrs. Charles H. Weston, Daniel W. Knowlton,* and *H. L. Underwood* were on the brief, for the United States and Interstate Commerce Commission, appellees.

*Mr. W. S. O'B. Robinson, Jr.,* with whom *Messrs. James M. Hull, Jr., George B. Barrett,* and *George B. Robinson, Jr.,* were on the brief, for the Piedmont & Northern Ry. Co. et al., appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit, under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220, was brought in the federal court for western South Carolina, to set aside an order of the Interstate Commerce Commission dated June 9, 1930. Restriction

in Routing in Connection with the Georgia & Florida Railroad, 165 I. C. C. 3. The plaintiffs are the Atlantic Coast Line Railroad, the Louisville & Nashville Railroad and the Charleston & Western Railroad. The defendants are the United States and, by intervention, the Commission, the Piedmont & Northern Railway and the Georgia & Florida Railroad. The order assailed was entered under § 15 (7) of the Interstate Commerce Act. It requires the cancellation of provisions in tariff schedules by which the plaintiffs seek to exclude the Georgia & Florida from participating as connecting carrier in through routes established over the Carolina, Clinchfield & Ohio Railway. The Commission held that the restrictive schedules violated the conditions under which that railroad had been leased to the Atlantic Coast Line and the Louisville & Nashville. Clinchfield Railway Lease, 90 I. C. C. 113. The District Court, three judges sitting, sustained the validity of the order and dismissed the bill. 48 F. (2d) 239. The case is here on direct appeal. We are of opinion that the decree should be affirmed.

The Clinchfield Railway extends in a southerly direction from Elkhorn City, Kentucky, to Spartanburg, South Carolina, a distance of 276.85 miles. The Atlantic Coast Line system lies to the east and south. To the west and south lies the Louisville & Nashville, of whose stock 51 per cent. is owned by the Coast Line. The Clinchfield is a link in many possible routes between points in the southeastern States and the north, in addition to those routes which are over the Atlantic Coast Line or the Louisville & Nashville. At Elkhorn City, the Clinchfield connects with the Chesapeake and Ohio Railway, whose system extends east, north and west. At Spartanburg, the Clinchfield connects with the Piedmont & Northern which extends in a southerly direction to Greenwood, South Carolina. And at Greenwood, the Piedmont & Northern connects with a recently built extension of the Georgia &

Florida, which now has 464 miles of line in the three southeastern States. The restrictive schedules excluded from the joint rates traffic over the Clinchfield if routed via the Georgia & Florida. Such traffic was thereby subjected to the applicable combination of higher local rates. The effect of this was to prevent not only the Georgia & Florida but also the Piedmont & Northern, the intermediate carrier, from participating in such business, with the result that the traffic would be secured for the Charleston & Western, which the Atlantic Coast Line controls through stock ownership.

In 1923 the Atlantic Coast Line and the Louisville & Nashville applied to the Commission for leave jointly to lease the Clinchfield. The extension of the Georgia & Florida to Greenwood was then in contemplation. The Piedmont & Northern and the Georgia & Florida opposed authorization of an unconditional lease, on the ground that if joint rates on traffic moving over the Clinchfield should be closed to them, they would be deprived of much traffic which might otherwise move over their lines or future extensions thereof. In order to preserve, among other things, the existing and possible through routes via the Clinchfield on railroads other than the Atlantic Coast Line and the Louisville & Nashville, the Commission, in authorizing the lease, made it subject to five conditions, which the lessees accepted.[1] Condition 1 requires the maintenance of a separate organization for the Clinchfield so that the road " shall con-

---

[1] The order of the Commission entered June 3, 1924, provided: " That the making of said lease and exercise of any of the rights conferred by this order shall in all future proceedings, judicial as well as administrative, to which the carriers above named or any of them may be parties, be deemed and taken as conclusive evidence of their acceptance of, and agreement to abide by, the conditions enumerated in said report, . . ." 90 I. C. C. at 139. Compare Control of Alabama & Vicksburg Railway, 111 I. C. C. 161, 182

stitute a separate operating unit." Condition 3 requires the continuance of existing routes and channels of trade, existing gateways for the interchange of traffic, and " the present neutrality of handling the traffic inbound and outbound" so as to permit equal service, routing, and movement of competitive traffic to and from all connecting lines reached by the Clinchfield.[2] Condition 4 requires the lessees to permit carriers then connecting with the line of the Clinchfield, or which may thereafter connect with it, to participate, without discrimination, in through routes and joint rates on traffic moving over the Clinchfield as an intermediate road between points at and beyond the Ohio River, on the one hand, and points in southeastern and Carolina territory, on the other; and that to this end the Clinchfield shall be maintained as an open route for traffic available to all carriers connecting with it.[3] The order of June 9, 1930, here

---

[2] " 3. So far as lies within the power of the applicants, existing routes and channels of trade and commerce heretofore established by other carriers in connection with the Clinchfield shall be preserved, existing gateways for the interchange of traffic with such other carriers shall be maintained, and the present neutrality of handling traffic inbound and outbound by the Carolina, Clinchfield & Ohio Railway and its subsidiary, the Carolina, Clinchfield & Ohio Railway of South Carolina, shall be continued so as to permit equal opportunity for service and routing or movement of traffic which is competitive with traffic of the applicants, or either of them, to and from all connecting lines reached by the line of the Clinchfield companies, without discrimination in service against such competitive traffic."

[3] " 4. The applicants shall permit the line of the Clinchfield and its subsidiaries to be used as a link for through traffic, via existing gateways of interchange, or via such gateways as may hereafter be established under authority of the commission by means of the connecting lines which the Louisville & Nashville Railroad Company proposes to build, equally available to such other carriers, now connecting, or which may hereafter connect, with the line of the Clinchfield and its subsidiaries, as may desire to participate in through routes and joint rates between points in territory north and west of the line of the

assailed, cancelled the restrictive schedules on the ground that they violated Conditions 3 and 4. The plaintiffs deny that the restrictive schedules are inconsistent with Conditions 3 and 4; and claim that if the schedules are inconsistent with the conditions, it is the conditions which are void.

*First.* The plaintiffs contend that the restrictive schedules are consistent with the conditions because the Georgia & Florida is not a carrier "connecting with the Clinchfield." The argument is that the Georgia & Florida does not connect, since its own rails do not physically abut on the Clinchfield's rails—the connection being made over the Piedmont & Northern, an intermediate carrier. There is no warrant for limiting the meaning of "connecting lines" to those having a direct physical connection with the Clinchfield. The term is commonly used as referring to all the lines making up a through route.[4]

*Second.* The plaintiffs contend that the restrictive schedules are consistent with the conditions, because these assure equality of treatment only to connections existing at the time the order was entered authorizing the

Clinchfield and points at and beyond the Ohio River on the one hand and points in the southeastern and Carolina territory on the other, under divisions to be agreed upon by the applicants, or either of them, and/or the Clinchfield organization, on the one hand, and by the other participating carrier or carriers on the other, and shall not discriminate as to rates, fares, and charges against such participating carrier or carriers as compared with the applicants, or either of them; the intention of this provision being that the line of the Clinchfield and its subsidiaries shall be maintained as an open route equally available to all carriers connecting with the Clinchfield for traffic between the points designated."

[4] Compare cases under the Carmack Amendment. Act of January 29, 1906, c. 3591, § 7, 34 Stat. 584, 595; *Galveston, H. & S. A. Ry. Co.* v. *Wallace*, 223 U. S. 481, 489; *Galveston, H. & S. A. Ry. Co.* v. *Woodbury*, 254 U. S. 357, 358.

lease, and the Greenwood extension, by means of which the Georgia & Florida connects with the Piedmont & Northern, was not built until several years thereafter. But the open route guaranteed by the conditions is not so limited. Condition 4 prescribes that the lessees "shall permit the line of the Clinchfield and its subsidiaries to be used as a link for through traffic, . . . equally available to such other carriers, now connecting, or which may hereafter connect, with the line of the Clinchfield and its subsidiaries, as may desire to participate in through routes and joint rates between points in territory north and west of the line of the Clinchfield and points at and beyond the Ohio River, on the one hand, and points in the Southeastern and Carolina territory, on the other."

*Third.* The plaintiffs contend that, as construed, Conditions 3 and 4 conflict with the provisions of § 15 (4) of the Act, which prohibits the Commission from requiring a carrier to establish "without its consent" any through route which does not embrace substantially the entire length of its line (including lines of controlled carriers) between the termini of the proposed route.[5] The argument is that the order short-hauls traffic which would otherwise pass over the Charleston & Western, and that this road is a part of the Atlantic Coast Line System. The Commission's order of June 3, 1924, which prescribed

---

[5] "(4) In establishing any . . . through route the commission shall not . . . require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established. . . ." Act of June 19, 1910, c. 309, § 12, 36 Stat. 539, 552, amended by Act of February 28, 1920, c. 91, § 418, 41 Stat. 456, 485.

the conditions did not require the lessees to abandon any protection given by § 15 (4) in respect to their then existing lines. It was not an order establishing a through route within the meaning of § 15 (3). In respect to the Clinchfield, which the carriers sought to acquire, the Commission gave them the option of either consenting to certain through routing over that road or abandoning their plan to lease the road. In effect, the Commission found that without such a condition the proposed lease was not in the public interest. With that condition it was. Compare *Chicago Junction Case*, 264 U. S. 258, 265. It was within the powers of the Commission to make such a condition.[6] Obviously the condition was not arbitrary. The provision was requested by the carriers interested; and it was required in order that competition, which the Commission deemed to be in the public interest, be preserved. Compare *Chesapeake & Ohio Ry. Co.* v. *United States*, 283 U. S. 35, 42. The limitation imposed by § 15 (4) of the Act upon the Commission's power under § 15 (3) to establish through routes is designed to protect the existing long-haul routes of carriers. Compare *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, 277. It applies only when the Commission is exercising the power conferred by that paragraph. It is not a limitation upon the power of the Commission to approve new combinations of carriers.

*Affirmed.*

---

[6] The Commission has frequently attached similar conditions to orders authorizing acquisitions of control. See, *e. g.*, Chicago Junction Case, 71 I. C. C. 631, 639; Control of Alabama & Vicksburg Railway, 111 I. C. C. 161, 178, 179; Control of Columbia, Newberry & Laurens, 117 I. C. C. 219, 227; Control of Chicago Heights Terminal Transfer R. R. Co., 124 I. C. C. 753, 760; Acquisition of Control by Illinois Terminal Co., 138 I. C. C. 487, 498; Acquisition of Control by Wabash Ry. Co., 154 I. C. C. 155, 162, 163.