# Commonwealth v. Sun Life Assur. Co. of Canada.

April 20, 1943.

Smith & Leary and S. M. Rosenstein for appellant.

Wm. Marshall Bullitt, Bullitt & Middleton, Leo T. Wolford and Francis T. Goheen for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Sun Life Assurance Company of Canada, hereinafter referred to as Sun Life, was licensed to engage in the life insurance business in Kentucky in 1926. At that time its policy was to invest a substantial portion

of its capital in common stocks. Most of these stocks were not then permissible investments for Kentucky insurance companies. Section 625 Kentucky Statutes, 1930 Edition. In May, 1929, in response to an inquiry addressed to the attorney general by the insurance commissioner, the latter was advised that as section 202 of the Kentucky Constitution prohibited a foreign corporation from doing business in Kentucky on more favorable conditions than were prescribed by law for similar Kentucky corporations, no foreign insurance company should be permitted to do business in Kentucky if its investments were different from those which domestic insurance companies were permitted to make. In order to secure the annual renewal of its license on July 1, 1929, the Sun Life complied with the demands of the insurance commissioner, and in June, 1929, deposited with the state treasurer stocks and bonds of the character in which domestic insurance companies were authorized to invest and of a market value equal to the reserve on its Kentucky policies. Annually thereafter securities were deposited or withdrawn so that at all times the value of the securities on deposit equaled the amount of the net reserve on Kentucky policies. In 1930 the General Assembly of Kentucky passed an act, Acts 1930, c. 59, providing that every insurance company doing business in Kentucky and required by law to make deposits of securities for the protection and benefit of its policyholders should make such deposit with the insurance commissioner who should hold them ''in his official capacity for the security and benefit of the policyholders of the company making such deposits and also as trustee for the insurance company.'' Section 1. The act also provided that the securities should be kept in a depository designated by the insurance commissioner, and the state treasurer was authorized and directed to deliver to the insurance company within 60 days after the act became effective all securities at that time in his hands deposited with him by any insurance company for the protection and benefit of its policyholders or otherwise. The act became effective April 2, 1930. On April 3, 1930, the insurance commissioner notified the Sun Life that the act had become effective, and that it would be necessary for it to secure safety vault facilities in one of the designated depositories in Louisville sufficient for the custody of its securities. On May 1, 1930, the state treasurer delivered to the insurance commissioner the

securities belonging to Sun Life on deposit with him, and they were deposited in the vault of the Citizens Union National Bank of Louisville, Kentucky, one of the designated depositories and the one selected by Sun Life. The state treasurer was again designated the custodian of such securities in 1934 by an act of the General Assembly. Chapter 155, Article 6, Section 2, Acts of 1934. In 1934 the General Assembly repealed and reenacted section 625 of the Kentucky Statutes. As reenacted the act widened the range of investments permissible for domestic insurance companies, and section 2 of the act, which dealt exclusively with foreign insurance companies doing business in Kentucky, provided as follows:

"Any foreign or alien insurance company hereafter licensed or relicensed to do business in this Commonwealth shall be possessed of assets of the same general character as specified for domestic insurance companies, except that investments authorized by the law of the home state, state of United States domicile, or country, of such company may be recognized as legal investments, in the discretion of the Insurance Commissioner." Chapter 92, Acts 1934; Ky. Stats. 1936 Edition, Section 625-1; KRS 296.190.

The investments of Sun Life, a Canadian corporation, were legal under the Canadian law, and after the effective date of the 1934 act were recognizable in Kentucky as legal investments in the discretion of the insurance commissioner. In December, 1935, the state treasurer and the insurance commissioner released to Sun Life the securities then on deposit. Under a trust agreement dated December 5, 1935, the Sun Life deposited with the Citizens Union National Bank, trustee, of Louisville, Kentucky, the securities withdrawn and probably others. The trust agreement provided that the trustee should hold the securities "for the benefit of the policyholders resident within the continental United States of America and the Territory of Hawaii." The trust was revocable. It seems that securities had been deposited with trustees under similar trusts in many other states. In November, 1938, the Commonwealth of Kentucky, on relation of its commissioner of revenue, brought an action in the Franklin county court to have assessed against Sun Life for taxation the securi-

ties in the hands of the state treasurer, insurance commissioner or the Citizens Union National Bank, trustee, on July 1st of each year, 1929 to 1937, inclusive. The value of the securities, as stipulated by the parties, ranged from $484,300 on July 1, 1930, to $1,609,810 on July 1, 1936. The suit was brought and prosecuted on the theory that Sun Life's stocks and bonds deposited with a state official or the Citizens Union National Bank in Kentucky during the years 1929-1937, inclusive, acquired a business situs in Kentucky, and were taxable regardless of their real and beneficial ownership by a nonresident. Sun Life defended upon the ground that the bonds and certificates of stock owned by it and physically present in Kentucky on July 1st of the years referred to in the petition had no taxable situs in Kentucky, but were merely held by the designated state official or the Louisville bank as trustee or agent for Sun Life, a foreign corporation of Montreal, Canada; that absolute dominion and control over their investment, reinvestment, and management and the collection of the income therefrom resided solely in Montreal, Canada, and no dominion or control over them was ever exercised in Kentucky; that the physical evidences of Sun Life's ownership of the stocks and bonds were only in Kentucky in order that they might be held by the trustee or agent for Sun Life for the protection of its Kentucky policyholders; and that Section 4020 of the Kentucky Statutes did not impose any tax upon such intangible personal property but for purposes of taxation fixed the situs thereof at the residence of Sun Life in Montreal, Canada, and not at the residence of the trustee or agent in Kentucky. The Franklin county court adjudged the property to be taxable and ordered its assessment, but on appeal to the Franklin circuit court it was adjudged that the property was not taxable and the Commonwealth's statement as amended was dismissed.

The solution of the problem turns on the construction of Section 4020, Carroll's Kentucky Statutes, 1936 Edition, which, in so far as pertinent, reads:

"All real and personal estate within this state, and all personal estate of persons residing in this state, and of all corporations organized under the laws of this state, whether the same be in or out of the state, including intangible property, which shall be considered and estimated in fixing the value of corpor-

ate franchises as herein provided, shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale: Provided, however, That tangible personal property located and having a taxable situs without the state, of persons residing in this state, and of all corporations organized under the laws of this state, shall not be subject to taxation: And, provided further, That the situs of intangible personal property for purposes of taxation shall be at the residence of the real or beneficial owner, and not at the residence of the fiduciary or agent having the custody or possession of same.''

This was an act of 1892, c. 103, as amended in 1906 and 1908. Section 4020, Kentucky Statutes, 1903 Edition; Acts 1906, Chapter 22, Article 1, Section 2; Acts 1908, Chapter 47. The 1906 amendment added the first proviso, and the 1908 amendment added the second proviso. The 1906 amendment dealt only with tangible personal property and was passed following the decision in 1905 of the Supreme Court of the United States in Union Refrigerator Transit Co. v. Commonwealth of Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493, holding that Kentucky was without power to tax tangible personal property outside of Kentucky. Obviously its purpose was to conform the Kentucky statute to the Supreme Court decision.

On June 19, 1907, this court held in Higgins v. Commonwealth, 126 Ky. 211, 103 S. W. 306, that intangible personal property such as notes, mortgages and bonds owned by a nonresident but in the hands of a resident fiduciary or agent for the purpose of controlling, managing and investing was taxable at the place of the fiduciary's residence. The court said:

''The property in question was not temporarily in the state. The trustee in whose custody it was exercised complete control over it by loaning it out, investing the proceeds, and collecting interest. This being true, the property had an actual situs in this state, and was subject to taxation.''

On June 12, 1907, just a week before the decision in the Higgins case was delivered, this court held in Commonwealth v. R. G. Dun & Co., 126 Ky. 108, 102 S. W.

24

859, 10 L. R. A., N. S., 920, that where a nonresident established his business in this state and managed it by resident agents and money or other property was accumulated from the operation of the business, such accumulations were taxable under Kentucky Statutes, Section 4020, declaring all personal property situated in the state subject to taxation. In 1908, at the first session of the Legislature after the rendition of these opinions, the Legislature amended Section 4020 by adding the second proviso, which reads:

"And, provided further, That the situs of intangible personal property for purposes of taxation shall be at the residence of the real or beneficial owner, and not at the residence of the fiduciary or agent having the custody or possession of same."

Manifestly this amendment was intended as a legislative reversal of the decisions in the Higgins and Dun cases, and, no doubt, was in recognition of the view then prevalent that double taxation was unjust and oppressive even if not unconstitutional. At the same session, in the same act, and with the same end in view, the Legislature amended Section 4023 of the Kentucky Statutes by inserting the following proviso:

"Provided, however, that an administrator, executor, trustee, committee, curator or agent residing in the state shall not be liable for taxes on intangible personal property, where the real or beneficial owner of such intangible personal property held by them, or any of them, reside outside of the state." Acts 1908, Chapter 47, section 2.

The act of 1908, passed in the light of the Higgins and R. G. Dun & Co. opinions, clearly expressed the legislative intent to fix the taxable situs of intangible personal property at the residence of the real or beneficial owner and not at the residence of the Kentucky fiduciary having the custody or possession of the property. Any other interpretation would be judicial quibbling. Appellant argues, however, that the Higgins and Dun cases have never been overruled, but, on the other hand, have been cited and followed in a number of cases in which the court has inferentially held that the 1908 amendment to Section 4020 did not affect the rule laid down in the Higgins and Dun cases, and that the Legislature did not intend to fix a taxable situs other than in Kentucky for

intangible personal property which had acquired a business situs in Kentucky.

We shall refer briefly to the cases cited by appellant. In Commonwealth v. West India Oil Refining Co., 138 Ky. 828, 129 S. W. 301, 36 L. R. A., N. S., 295, decided June 17, 1910, the Dun and Higgins cases were cited with approval. The 1908 amendment to Section 4020 was not referred to. However, that amendment was not involved as the taxes sought to be recoverd apparently were for years prior to the effective date of the act, though the opinion is not clear on this point. Nevertheless three judges dissented from so much of the opinion as held the intangible personal property was not taxable in Kentucky although it had acquired a business situs in a foreign country. In Commonwealth v. B. F. Avery & Sons, 163 Ky. 828, 174 S. W. 518, decided March 26, 1915, it was held that accounts receivable of selling agencies in other states had acquired taxable situs there and were not taxable in Kentucky. These two cases were overruled in Bingham's Adm'r v. Commonwealth, 199 Ky. 402, 251 S. W. 936, in so far as they held that intangibles of a resident owner are not taxable in Kentucky if they are taxable in another state in the hands of an agent or fiduciary. The case of Commonwealth v. Kentucky Distilleries & Warehouse Co., 143 Ky. 314, 136 S. W. 1032, decided April 25, 1911, held that storage accounts of the Kentucky Distilleries & Warehouse Company in Kentucky were taxable here as the company had a mere technical residence in New Jersey and all of its plants were located in Kentucky and all of its business was done in Kentucky, and for every business purpose it was a Kentucky corporation. In Hillman Land & Iron Co. v. Commonwealth, 148 Ky. 331, 146 S. W. 776, L. R. A. 1915C, 929, decided May 14, 1912, the Dun case was cited, but it was held that where the St. Louis owner of land in Kentucky sent money to Kentucky to pay deficits it was not taxable in Kentucky as it had not acquired a business situs here. In Commonwealth v. Prudential Life Ins. Co., 149 Ky. 380, 149 S. W. 836, decided September 18, 1912, the cash, accounts, choses in action and notes representing revenue received by the company upon its business in Kentucky were held not taxable on authority of Hillman Land & Iron Co. case as the property was in Kentucky only temporarily. In Commonwealth v. Consolidated Casualty Co., 170 Ky. 103, 185 S. W. 508, decided May 10, 1916, it was held that

26

bonds owned by a West Virginia corporation secured by property in Kentucky were not taxable in Kentucky though its executive office was in Kentucky and its officers resided therein. In Semple v. Commonwealth, 181 Ky. 675, 205 S. W. 789, decided October 22, 1918, an attempt was made to assess tangible and intangible personal property of Semple in Kentucky. The only question involved was whether Semple was a resident of Kentucky or Texas. It was held that he was a resident of Texas, and the property was not taxable in Kentucky. In American Barge Line Co. v. Board of Sup'rs of Tax of Jefferson County, 246 Ky. 573, 55 S. W. (2d) 416, it was held that neither the tangible nor intangible personal property of the foreign corporation had acquired a business situs in Kentucky. In Commonwealth v. Madden's Ex'r, 265 Ky. 684, 97 S. W. (2d) 561, 107 A. L. R. 1379, Madden, a resident of Kentucky, was a member of a partnership engaged in business in New York. It was held that his interest in the partnership was not a thing apart from the partnership itself, and that the intangible personal property of the partnership was taxable in New York.

The 1908 amendment to Section 4020 was not referred to in any of the foregoing cases, but in each case the decision was in harmony with our construction of the statute. A reliance upon the statute would not have altered the decision in any case. The only case in which a result was reached having an appearance of conflict with the statute is Commonwealth v. Kentucky Distilleries & Warehouse Co., but the decision was put on the ground that the company was really domiciled in Kentucky and for every business purpose was a Kentucky corporation. The business situs doctrine relied upon by appellant has been adopted in practically all jurisdictions, and has been recognized and applied in this jurisdiction, but Section 4020 as amended in 1908 did not except from the nontaxability provision intangible personal property held by a Kentucky fiduciary or agent for a nonresident owner although technically the property, by the manner of its use, may have acquired a business situs in Kentucky. The language of the amendment is plain, positive and unambiguous. The Legislature in 1938, recognizing that the amendment meant what it said, amended Section 4020 by inserting in the first paragraph, providing for the taxation of all property of persons residing in this state, the following: "* * * and the intan-

gible property of non-residents, including corporations not organized under the laws of Kentucky if said property has acquired a business situs in Kentucky," and by adding the following after the second proviso of the statute:

"Provided further, that all intangible personal property including money in hand, notes, bonds, accounts and other credits whether secured by mortgage, pledge or otherwise, or unsecured, and shares of stock together with all other intangible personal property irrespective of whether or not the same has heretofore been subject to taxation in the Commonwealth of Kentucky shall have a situs and be subject to taxation in this Commonwealth insofar as the General Assembly of Kentucky can subject the same to taxation under the terms of the Constitutions of the United States and of Kentucky." Acts. 1938, 1st Ex. Sess., c. 6, page 1026, KRS 132.190.

The purpose of the 1938 amendment, of course, was to subject to taxation a nonresident's intangible personal property if such property had acquired a business situs in Kentucky. It was a recognition by the Legislature of the fact that such property was not taxable in Kentucky under the 1908 amendment, and this interpretation of its own act by the Legislature supports our interpretation which we think is authorized by the clear and unambiguous language of the statute and effectuates rather than destroys the spirit and force of the law which the Legislature intended to enact.

The Commonwealth insists that the Legislature, by attempting to fix the taxable situs of intangibles, exempted from taxation in Kentucky intangible personal property owned by a nonresident which had acquired a business situs in this state. It is argued that the Legislature is without power to fix the taxable situs of property, that the 1908 amendment to Section 4020 is an exemption statute and, as such, contravenes the Constitution and is void. The act was assailed on the ground that it was unconstitutional in City of Henderson v. Barret's Ex'r, 152 Ky. 648, 153 S. W. 992, 995. Barret died a resident of Henderson, Kentucky. He devised his property to the Ohio Banking & Trust Company, a Kentucky corporation, in trust. The trustee was to manage and control the estate and pay the net income therefrom to the testator's two daughters, both nonresidents of

28

Kentucky, and was given the power to change the investments at any time. The City of Henderson attempted to assess and collect taxes on certain bonds, stocks and other intangible property which the trustee had in its possession. Clearly this property had acquired a business situs in Kentucky. This court held that the act of March 23, 1908, amending Sections 4020 and 4023 of the Kentucky Statutes, was constitutional. It was insisted that as intangible personal property actually in this state was not exempt from taxation by Section 170 of the Constitution, it was controlled by the provision of Section 172 to the effect that all property not exempted from taxation by the Constitution shall be assessed for taxation at its fair cash value, and since the effect of the act of March, 1908, was to exempt property which the Constitution required to be taxed, it was unconstitutional. After referring to and quoting from numerous cases, including the Higgins case, the court said:

"We think the rule to be deduced from these cases is: That ordinary intangible personal property follows the person of the owner, but that its situs may be fixed by the Legislature of the state. If the Legislature sees fit to fix the situs of such property at the residence of the trustee, it may do so; on the other hand, if it sees fit to fix the situs at the residence of the beneficial owner, that power cannot be denied.

"After providing that the situs of intangible personal property should be fixed at the residence of the beneficial owner, it was but right and proper that the Legislature, to carry out as far as possible the scheme of uniformity, should provide that in the case of a nonresident the same rule should apply. If the Legislature has not the power to fix the situs of intangible personal property at the residence of the nonresident beneficial owner, then for the same reason it has not the power to fix its situs at the residence of the resident beneficial owner, where his residence is not the same as that of his trustee; for under the latter provision a resident beneficial owner often escapes burdens which he could not escape if his intangible property were taxed at the residence of his trustee. * * *

"We therefore think that the only rule that can be applied in such cases is that intangible per-

sonal property has no fixed situs in the absence of judicial construction or legislative enactment, and that the Legislature has the undoubted right to fix its situs for the purposes of taxation.

"While the Constitution provides for the assessment of all property not exempted from taxation that provision must be read in the light of the generally accepted view, at the time of the adoption of the Constitution, that intangible personal property followed the person of the owner. In other words, the Constitution operates upon all intangible property of which the state has jurisdiction, and whether or not it takes jurisdiction, where the beneficial owner lives outside the state, depends upon legislative enactment."

In Bingham's Adm'r v. Commonwealth, 199 Ky. 402, 251 S. W. 936, 938, the beneficial owner of trust property was a resident of Kentucky. The trustee resided in Florida and there managed and controlled the trust property and invested and reinvested the funds. It was conceded that under the Higgins opinion the property had acquired a business situs in Florida, but the court in its opinion called attention to the fact that Section 4020 of the Kentucky Statutes was amended after the opinion in the Higgins case was rendered, and in speaking of the 1908 amendment said:

"It is manifest that in so doing at its next session, the Legislature was exercising its authority as declared in the Higgins case, and thereby fixed the situs of intangible personalty for the purposes of taxation by this state at the residence of the owner and not at the residence of the agent or fiduciary as decided in that case. Hence, if the Legislature had the power to fix the situs of such property as expressly held in the Higgins case, the Flagler trust property, under the doctrine of that case and the statute as amended, is here rather than in Florida, and that case, instead of sustaining the contention of counsel for the estate, destroys it. But they argue, although relying upon that case, that the taxable situs of intangible personalty is not a question of legislative control, as was held not only in the Higgins opinion, but in many others from this court, such as Commonwealth v. Northwestern Mutual Life Ins. Co., 107 S. W. 233, 32 Ky. L. Rep. 796; Johnson,

Sheriff, v. Bradley-Watkins Tie Co., 120 Ky. 136, 85 S. W. 726; Commonwealth v. Camden, 142 Ky. 365, 134 S. W. 914; and City of Henderson v. Barret's Ex'r, 152 Ky. 648, 153 S. W. 992.''

The court held that the Legislature did have the power to fix the taxable situs of intangible personal property, and that under the 1908 amendment to Section 4020, the trust property beneficially owned by Mrs. Bingham was taxable in Kentucky even though it had acquired a business situs in Florida. The opinion in the Higgins case so strongly relied upon by appellant was based on the premise that the taxable situs of the property there involved had been fixed by statute. In the opinion it was said, ''the situs of intangible personal property for purposes of taxation depends altogether on legislative enactment, or judicial construction,'' and further along:

''With the wisdom or policy of this law we are not concerned. That is a matter to be addressed to the legislative department of the government. It is sufficient for us to know that the Legislature has seen proper to provide for the assessment and taxation of this species of property, and to fix its situs for this purpose.''

Other domestic cases to the same effect are Commonwealth v. Sutcliffe, 283 Ky. 274, 140 S. W. (2d) 1028; Cumberland Pipe Line Co. v. Commonwealth, 258 Ky. 90, 79 S. W. (2d) 366; Siler v. Board of Sup'rs, 221 Ky. 100, 298 S. W. 189; Millett's Ex'r v. Commonwealth, 184 Ky. 193, 211 S. W. 562; Sumrall's Committee v. Commonwealth, 162 Ky. 658, 172 S. W. 1057; Commonwealth v. Northwestern Mut. Life Ins. Co., 107 S. W. 233, 32 Ky. Law Rep. 796. That the Legislature has power to fix the taxable situs of intangible personal property, provided it does not act arbitrarily, is generally recognized. Cooley on Taxation, 4th Edition, volume 2, Section 444. In Mayor, Etc., of Baltimore v. Safe Deposit & Trust Co., 97 Md. 659, 55 A. 316, 317, an act specifically fixing the situs for purposes of taxation of personal property held in trust at the residence of the beneficial owner was attacked on the ground that it was in conflict with a section of the Maryland Constitution similar to Section 172 of our Constitution. After stating that it had repeatedly recognized and upheld the power of

the Legislature to fix the situs of personal property for purposes of assessment and taxation, the court said:

> "When property is held in trust, there are two persons, each of whom is, in a certain sense, its owner. The trustee, who holds the title, is the owner in a legal and technical sense, but the cestui que trust is the beneficial and substantial owner. We do not think that the Legislature has exceeded its power over the subject of taxation, or violated any of the provisions of the Bill of Rights or Constitution, in providing that personal property of the kind involved in this case shall, for purposes of assessment and taxation, be treated as belonging to its substantial owner, and not to its technical holder."

The foregoing cases conclusively answer the argument that the Legislature is without power to fix the taxable situs of intangible personal property, and that the act of March 23, 1908, is unconstitutional. We do not mean to be understood as holding that the stocks and bonds of Sun Life had acquired a "business situs" in Kentucky, but we deem it unnecessary to determine that question in view of our conclusion that in no event were they taxable under the law then in force.

The judgment is affirmed.

Whole court sitting.