## Atlantic Coast Line R. Co. v. Commonwealth.

Feb. 22, 1946.

As Modified on Denial of Rehearing

April 16, 1946.

38

Woodward, Dawson, Hobson & Fulton and Carl H. Davis for appellant.

Eldon S. Dummit, Attorney General, Roy W. House, Assistant Attorney General, and Henry S. Chesnut for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The judgment is for $2,358,332 against the appellant, Atlantic Coast Line Railroad Company, for income taxes for eight years, 1936 to 1943. Penalties and interest to the amount of $1,212,668 are included in the judgment, the tax itself being $1,145,664.

The section of the statutes upon which the judgment principally rests, and on the construction of which our decision depends, is Section 4281b-14(3), Kentucky Statutes, and, since 1942, Kentucky Revised Statutes 141.040, the applicable portions of which are quoted for ready reference:

"Every corporation organized under the laws of this state and every foreign corporation doing business in this state * * * shall pay for each taxable year a tax to be computed by the Department of Revenue upon the entire net income of the corporation derived from

business done, property located or sources in this state. This tax shall be at the rate of four percent of the entire net income of the corporation, or the portion thereof taxable within this state, determined as provided in this chapter.''

The appellant is a Virginia corporation, but has its principal place of business in North Carolina. Solely as an investment it owned (subject to a trust indenture) during the taxable period 596,700 shares of the capital stock of the Louisville & Nashville Railroad Company, a Kentucky corporation, with its principal place of business in Louisville. The investment was originally made in 1902 and the number of shares owned has increased proportionately as the capital stock of the company was increased, the proportion of the holding always being 51% of the whole. The certificates have been in New York and pledged to secure bonds issued initially for the purchase of the stock. The dividends have been paid to the Atlantic Coast Line Railroad Company. The aggregate is $28,641,600 for the period covered by the suit. The stock has been held solely as an investment, apart from the appellant's regular business as a common carrier, and the dividends thereon were not received in connection with the transaction of the railroad business.

We are not concerned with any question of constitutional power, but only with one of statutory construction.

The adjudged liability is predicated upon the ruling of the trial court that (I) the appellant, a foreign corporation, was ''doing business in this state''; and (II) the dividends were derived from ''sources in this state.''

I.   In the year 1924 all of the property of a line of railroad of 276 miles, extending from a point 2.8 miles in Kentucky to Spartanburg, S. C., where connection is made with a line to the seaboard, was leased to the Atlantic Coast Line Railroad Company and the Louisville & Nashville Railroad Company, jointly, for 999 years. These two companies were not permitted to operate the line as a part of the Atlantic Coast Line system, but were required to establish a separate operating organization, known as the Clinchfield Railroad Company, which is not incorporated. This is a ''separate operating unit, having a responsible management directly in charge of the operations of such properties.'' 90 I. C. C. 113, Finance Docket 3131. It is a ''neutral line not operated

in conjunction or under common management or control" with the Atlantic Coast Line Railroad Company. Georgia & Florida Railroad v. Atlantic Coast Line Railroad Company, 191 I. C. C. 489; Rates on Chert, Clay, Sand and Gravel in Georgia, 197 I. C. C. 215; Atlantic Coast Line R. Co. v. United States, 284 U. S. 288, 52 S. Ct. 171, 76 L. Ed. 298.

Returns for the computation of franchise taxes were duly made by the operating entity, the Clinchfield Railroad, and they were specifically accepted by the Department of Revenue of the State as being in fact the returns of the Atlantic Coast Line Railroad Company covering the operation of the leased properties. Although having full information of the status, it appears that the Department has not heretofore regarded the Atlantic Coast Line Railroad Company as otherwise doing business in Kentucky within the income tax statutes. It has not required the company to render a report of its payments of dividends to residents of this state as is required by KRS 141.150, of "every corporation subject to the jurisdiction of this state, unless excused by the Department of Revenue."

Apparently in anticipation of being permitted to operate the Clinchfield line, the appellant, in 1924, filed with the Secretary of State of Kentucky, in conformity with section 841, Kentucky Statutes (now KRS 277.020), proper instruments by which it became qualified to operate a railroad in Kentucky. At the same time it designated and has continuously maintained a Kentucky process agent. It has had no office or other officer in the state. These proceedings, however, would not of themselves be controlling or constitute the doing of business if in fact the right to operate a railroad in Kentucky was never exercised.

It is doubtful whether the status of the appellant constitutes doing business in Kentucky. It might be said, however, that it is doing so through the unincorporated Clinchfield Railroad as a mere operating agency. Commonwealth v. Southern R. Co., 193 Ky. 474, 237 S. W. 11. However important the question may be, we bypass a decision of it and shall assume for the purpose of this case that the appellant is a foreign corporation doing business in Kentucky within the contemplation of the income tax statute.

II. The income subject to the tax is that "derived from business done, property located or sources in this state." KRS 141.040, above quoted. The decision turns on the interpretation to be given the word "sources." Its use and meaning are uncertain. It is to be ascertained and given from the rational consideration of the whole chapter of the statutes relating to income taxes in correlation with our general taxing system. All relevant rules for the interpretation of statutes are brought to bear in resolving the doubtful meaning. We indulge the presumption that the Legislature acted with the knowledge that these traditional methods would be used to determine its will and intention.

Since the obligation to pay taxes rests solely on legislation, the legislative intent to tax must clearly appear. It is an established rule that, except as respects exemption, tax laws are to be strictly construed against the state and in favor of the taxpayer, especially with respect to penalties or harsh enforcement. Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S. W. 2d 42. The broad statement is, of course subject to qualifications according to differing elements and factors. It is always to be borne in mind that the taxing statutes are framed to produce revenue, and must be given a reasonable construction—not one that "squeezes everything out of the statute which unyielding words do not perforce retain," nor one to expand the law and bring within its terms what was omitted. Cooley, Taxation, Sec. 505; Sutherland, Sec. 2115; Martin v. F. H. Bee Shows, 271 Ky. 822, 113 S. W. 2d 448.

1. Is the word "sources" to be set apart to itself as independent and as having no relationship to the preceding clauses "business done" and "property located"? If it is, then for what use were those clauses intended? The word "sources" standing alone is all inclusive; and standing alone would cover income from business done and property located in the state. This creates ambiguity. The broadness of the language does not permit us to tear these clauses out of the context, nor to isolate the word "sources." Left in and given effect, under the doctrine of ejusdem generis and the related rule of noscitur a sociis, the generic word "sources" must be presumed to be restricted in some degree, at least, by those specific clauses, or to embrace origins of similar character or of a nature analogous to those

expressly enumerated. It cannot be said that the two clauses exhaust the classes of income so that there is nothing ejusdem generis left for the rule to operate on, so that a meaning must be given to the general word different from that indicated by them. Burke v. Oates, 293 Ky. 563, 169 S. W. 2d 608; 50 Am. Jur., Statutes, secs. 249, 250. It seems to us, therefore, that "sources" was intended to mean income having some origin that is at least related to "business done," i. e., some thing done or action taken, or to "property located," i. e., used, in Kentucky.

The conclusion does not rest alone upon this rationalization or the mere application of these general rules of construction. It is supported, we think, by several reasons, some of which are very specific and cogent. Other provisions of the income tax statute have made objective footprints in the trail leading to the discovery of the legislative intent.

2. "Dividend" is defined in the income tax statute, KRS 141.010(3), to mean "any distribution made by a corporation * * * to its shareholders or members." Such distribution "constitutes income to its recipient." KRS 141.150(1) is as follows:

"Every corporation subject to the jurisdiction of this state, unless excused by the Department of Revenue, shall render a correct report, duly verified under oath, of its payments of dividends to residents of this state, stating the name and address of each shareholder, the number of shares owned by him, and the amount of dividends paid to him."

Paragraph (2) of that section requires "every person subject to the jurisdiction of this state, in whatever capacity acting," to report payments of rents, interest, premiums, profits and the like to other persons "domiciled in this state," giving their names and addresses. Paragraph (3) provides that such reports "may be required" as to payment of "dividends or interest on bonds," etc. of corporations.

This section reveals the legislative intent to tax dividends received by residents of this state and none other. We cannot avoid the conclusion that by omitting the requirement of a report of dividends paid to non-residents the Legislature intended not to tax such dividends. Otherwise, there was deliberately left an avenue

of escape for non-resident recipients from the payment of such tax. There is no other available method of finding out who receives dividends from either domestic or foreign corporations. There is no convenient way of subjecting the recipients to enforcible payment of the tax.

3. Equality and uniformity are presumed and discrimination and irregularity rejected where a tax statute, or any portion of it, must be construed or applied upon implication. Commonwealth v. Ledman, 127 Ky. 603, 106 S. W. 247, 32 Ky. Law Rep. 452; Martin, Commissioner of Revenue, v. Gage, 281 Ky. 95, 134 S. W. 2d 966, 126 A. L. R. 449. By the converse of an express provision a non-resident individual is not subject to the payment of a tax upon income received from intangible property unless it has acquired a business situs in this state. That is plain. KRS 141.020(2). More than that. A provision with respect to natural persons is brought into and made applicable to the section taxing ''estates and trusts and to all fiduciaries.'' KRS 141.030. If the income is or may in the future be payable to some non-resident corporation not of the exempt class, it is ''subject to tax only to the extent to which individuals other than residents are liable under this chapter.'' KRS 141.030(3). If the word ''sources'' in 141.040 be given the interpretation we have indicated of having some relation to ''property located'' or ''business done'' in this state, equality is achieved and discrimination avoided.

We do not overlook the fact that uniformity required of an income tax is uniformity within a reasonable classification. Cooley, Taxation, Secs. 1671, 1752. Nor that sometimes it is permissible to impose different tax burdens as between domestic and foreign corporations operating within the state. Cooley, Taxation, Secs. 342, 359, 906; Henry Fisher Packing Co. v. Mattox, 262 Ky. 318, 90 S. W. 2d 70. Yet there can be no doubt that where such discriminations are intended, the statute should clearly say so and the Legislature should not leave it to be made by the courts through construction of an ambiguity. This is emphasized in this case by the fact that we are dealing merely with a stockholder and its dividends and not with property or any activity within the state in any way related to them. Under our Constitution, Sec. 174, the fact that a corporation is a stockholder does not make the stock subject to the property tax where an individual owner would not be assessable.

Commonwealth v. Louisville Gas Co., 135 Ky. 324, 122 S. W. 164. Therefore, the justification for any different treatment or discrimination ordinarily recognized as legitimate as between corporations and individuals is not so strong in respect of income from that source. Even where the tax imposed is of a character where different treatment is lawful, e. g., licenses, there must be some rational basis for the separate classifications. Commissioner v. Weis, 269 Ky. 554, 108 S. W. 2d 515; City of Louisville v. Ætna Fire Ins. Co., 284 Ky. 154, 143 S. W. 2d 1074. That difference does not appear in this case.

4. The court cannot ignore the provision in KRS 141.040, levying the tax upon net incomes, that the computation shall be upon "the portion thereof taxable within this state, determined as provided in this chapter." Capital employed in the transaction of business is distinguishable from a mere independent investment. Cooley, Taxation, Secs. 904, 919. If no part of the property or capital is taxable in Kentucky, the income therefrom is not taxable. Commonwealth v. Radio Corporation of America, 299 Ky. 44, 184 S. W. 2d 250. The source of the dividend is the stock owned, and none of the stock in the present case is subject to ad valorem taxation in Kentucky. As intangible property it has had its taxable situs at the domicile of the beneficial owner, outside Kentucky. Section 4020, Ky. Stats., KRS 132.190; Commonwealth v. Sun Life Assurance Co., 294 Ky. 19, 170 S. W. 2d 890, 891; County Board of Tax Sup'rs v. Helm, 297 Ky. 803, 181 S. W. 2d 452. A shareholder has no right to the earnings of the corporation until a portion has been set apart by the declaration of a dividend. This is given recognition by the definition of "dividends" in this statute quoted above. When so declared, the relationship becomes that of debtor and creditor, and the right to receive the dividends becomes a chose in action. Fidelity & Columbia Trust Co. v. Louisville R. Co., 265 Ky. 820, 97 S. W. 2d 825; Taylor v. Axton-Fisher Tobacco Co., 295 Ky. 226, 173 S. W. 2d 377, 148 A. L. R. 834. Its taxable situs is the domicile of the creditor. Commercial Credit Co. v. Commonwealth, 296 Ky. 826, 178 S. W. 2d 188. If neither the stock nor the choses in action which arose from the declarations of the several dividends were subject to ad valorem taxation, we can conclude only that the receipt of the dividends is not subject to income taxation.

5. KRS 141.120 deals with the allocation of corporate income to Kentucky in whole or in part. Paragraph (1) sets apart dividends and other income "not received in connection with the transaction of the business" or the ownership or use of property of a corporation in Kentucky and allocates it to the state of its "source." Paragraph (2) imposes the tax on the entire income arising from the trade or business of a corporation carried on wholly or partly within this state.

The distinction is here made between what the statute calls business income and what we may call non-business or investment income. Here it is recognized that dividends and kindred income, such as interest, rents or royalties, having no relation to business done or property located in this state, is not subject to tax in Kentucky, the source being the taxable situs of the intangibles. We have so held with respect to payments for use of patent rights. Commonwealth v. Radio Corporation of America, 299 Ky. 44, 184 S. W. 2d 250.

It is significant that only business income "reasonably attributable to the trade or business within this state" is made taxable, and gains from the sale of intangible property are taxable only when "connected with the business in this state." Net income and capital gains are treated alike for taxable purposes.

This provision of the statute is in harmony with paragraph (5) of the section (141.120) dealing with business income of a public utility, which the Commonwealth alleges the appellant railroad company to be. It is therein provided that the portion of such income "attributable to business within the state shall be taken to be such percentage of the total of such income as the tangible property and business within this state bear to total tangible property and total business." As we have stated, the percentage of tangible property owned and of business done in Kentucky by the appellant is negligible. Certainly, the tax asserted has no just relation to either its business income or the value of its business property in Kentucky. To be sure, this is not a tax imposed upon either. The points here are (1) that income from intangible property is not specifically considered, and (2) that the whole aim and purpose of the statute as it relates to business income is clearly indicated to be a fair and just relationship to the source. The basic

idea stands fairly clear to secure allocation to this state of income arising from something done or something owned or something having a taxable situs in Kentucky, whether it is from an investment purely or is the product of activity.

6. As well said in Toledo Scale Co. v. Hill, 151 Tenn. 312, 269 S. W. 25, 27, it has been "repeatedly held that statutes levying taxes * * * will not be extended by implication beyond the clear import of the language used, nor will their operation be enlarged so as to embrace matters not specially pointed out, although standing upon a close analogy, and all questions of doubt will be resolved against the government and in favor of the citizen, because burdens are not to be imposed beyond what the statute expressly imparts." In Martin, Commissioner, v. Gage, supra, 281 Ky. 95, 134 S. W. 2d 966, 126 A. L. R. 449, we construed Section 4281b-1, now KRS 141.010, as not making taxable the income of an individual derived from sources without the state prior to the time in the year when the taxpayer became a resident here, even though the Income Tax Act, when taken as a whole, is susceptible to the reverse construction. We declined to hold that portion of the income to be subject to the tax merely because the statute did not expressly exempt it.

7. While it is beyond the power of the Department of Revenue by regulations to broaden or to narrow the tax base established by the Statutes, it apppears to have been the administrative construction of this statute during the years of its existence (being the period for which this tax has been imposed) not to give it extra territorial effect in this connection where there was no fair approximation or relation of the income to the business done or property located in the state. The Department of Revenue issued a revised regulation in 1940 expressly recognizing that the business situs of stock may be in a state other than the residence of the owner, and provided that "dividends received from stock having a situs outside of the state shall be allocated outside of the state." That has not been changed. It is stipulated that the appellant and other foreign corporations of like status accepted those regulations and paid their taxes in conformity therewith. In April, 1940, the Director of the Income Tax Division of the Department of Revenue wrote a representative of the appellant and the Louis-

ville & Nashville Railroad Company with respect to the applicability of the statute and regulations to the particular dividends involved in this case:

"I can assure you that the Department has never and does not intend to undertake to tax income under such circumstances. The Department's position has consistently been that such income arises by reason of ownership of certain intangible property and is taxable at the situs where such property is held."

Where a tax law has been put into operation and a construction contemporaneously placed upon it by the agency responsible for its administration and enforcement, that construction, especially if followed for a considerable period, is entitled to great respect as being very probably a true expression of the legislative purpose. Sutherland, Statutory Construction, Section 5108, 6709. With us interpretative regulations do not have the force and effect of law, and the construction thus placed upon the statute will not be adopted unless the statute is ambiguous in its terms and its true meaning is difficult to ascertain. Jefferson County ex rel. v. Jefferson County Fiscal Court, 269 Ky. 444, 107 S. W. 2d 320. Reeves v. Louisville Gas & Electric Co., 290 Ky. 25, 160 S. W. 2d 391. Although the regulation in this instance has been in existence approximately the life of income taxation in Kentucky, the brevity of time weakens the force of the theory of contemporaneous construction in holding against the Commonwealth. Commonwealth v. Kentucky Distilleries & Warehouse Co., 143 Ky. 314, 136 S. W. 1032. But it is of influence in determining the ambiguity, for a decision that these dividends are subject to the tax would reverse the policy and construction of the law by the administrative department of the government and probably result in penalizing many others similarly situated to the appellant. It is possible such interpretation of the word "sources" would consistently require the holding that the receipt by Kentucky corporations of dividends on stock in foreign corporations are not taxable in Kentucky but at the domicile of the foreign corporations.

8. The appellant's property in Kentucky as we have described, is a one-half interest in the perpetual leasehold of less than three miles of railroad and the business done (as we have assumed) is the operation of it. The largest proportionate part of income from that

business source allocated to Kentucky and accepted by the Commonwealth was in 1941, the amount being $15,538 and the tax $621.54. The intrastate earnings have been negligible, the largest being $16.50 in the year 1943. The ownership of the stock of the L. & N. Railroad Company and the receipt of dividends on what is agreed to be a pure investment has no relation to those sources. The fact that both the investor and the company in whose stock it has invested are railroad companies is only an incidence and it is irrelevant to the question of taxability. Yet the imposition of this income tax would have cost the investor an average of $143,208 each year. The virtual confiscation of its entire property indirectly operated in Kentucky, of course, could not be permitted. Martin v. Nocero Ice Cream Co., 269 Ky. 151, 106 S. W. 2d 64.

To be sure, if the other factors developing immunity were not present, the relative amount of business done or value of property located here would not be controlling. But that would result in only a fair and reasonable tax being imposed because the allocation would be, as in fact it has been, upon that ownership and commercial activity. There is no hardship or injustice in imposing a tax on a foreign corporation doing business in the state when measured by the amount of its capital and the business ordinarily done, since the corporation has the benefit of the state government. It may be noted that the United States does not subject to income taxation dividends received by non-resident aliens from foreign corporations deriving less than 50 per cent of their gross income from "sources within the United States." 26 U. S. C. A. Int. Rev. Code, sec. 119. And domestic corporations are allowed a credit on account of foreign income taxes in computing their Federal income tax by express provisions. 26 U. S. C. A. Int. Rev. Code, sec. 131(a) (1).

9. To construe "sources in this state" and make the present application contended for by the Commonwealth would pyramid taxes on the original earnings. That is a vice opposed by public policy unless clearly manifested by a statute and is never to be imposed by presumption. Falls City Brewing Co. v. Talbott, 265 Ky. 541, 97 S. W. 2d 57; Hertz Drivurself Stations v. City of Louisville, 294 Ky. 568, 172 S. W. 2d 207, 147 A. L. R. 306. The Louisville & Nashville Railroad Company had already paid to Kentucky its proportionate part of its business income and as a citizen of Kentucky paid it on all its

income from investments. Going farther back: Presumably the corporations whose stock it owned had also paid income taxes on their earnings in the various states of location. It is stipulated that the dividends paid by the Atlantic Coast Line Railroad Company and other stockholders were from the accumulated surplus without regard being taken for the earnings of any particular year. As a practical matter (looking behind the legalistic conception of distinct personalities) the appellant paid 51 per cent of that income tax. Now merely as a stockholder it would have to pay again on what it received as part of a distribution of those earnings. As a taxpayer in the state of its domicile, Virginia, it has been chargeable with a gross receipts tax of 3% on those very dividends. Secs. 52, 53 Tax Code of Virginia, Code 1942 Appendix secs. 52, 53.

10. We are not advised that any other state attempts to impose a tax on dividends received by Kentucky corporations or individuals on stock owned by them as investments in corporations domiciled in any other state. The Virginia statute allows proportionate credit on income taxes payable there by a non-resident for taxes paid his state of domicile on income having its source within Virginia. Sec. 40, Tax Code, Code 1942 Appendix, sec. 40. Other states recognize the doctrine of reciprocity. Should this court sanction the construction contended for by the Commissioner of Revenue, it would be to violate that principle. It would build an economic barrier around Kentucky, for we apprehend that no outside capital would care to take the risk of being squeezed for an income tax on the investment here, if forsooth, the investor should come into the state and transact business or acquire or use property here even to a negligible extent or value and even though it had no relationship to the investment.

11. Upon a complete survey of the field of precedent we find no case exactly in point although several support the view of non-taxability by analogy.

In Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S. W. 2d 42, we had before us a case where a Kentucky corporation operating a chain of theatres received dividends from a subsidiary Indiana corporation. As the Kentucky company operated theaters in Indiana as a part of its unified

business, either under lease or through its wholly owned subsidiary as a mere agency (stipulated to be the same as under lease), we regarded the dividends as "business income" to be considered as such in the allocation of its income to Kentucky and not as investment income, as the Tax Commission contended. We referred to the Missouri cases, infra, only in so far as the argument in them related to the disregard of legal fictions and regard for the realities—the reality of the Indiana corporation being in fact the Kentucky corporation.

The Wisconsin income tax statute imposed a tax on income received by nonresidents of the state "derived from sources within the state or within its jurisdiction." The phrase was not associated with any clause definitely indicating the taxation of income from business done or property located in Wisconsin as does our statute. Nevertheless it was held not to apply to interest on bonds paid by a Wisconsin corporation to nonresidents, the court construing the act as seeking to reach only incomes having a situs within the state or growing out of a privilege exercised or occupation conducted within the state. State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111, 152 N. W. 848. Later in Newport Co. v. Wisconsin Tax Commission, 219 Wis. 293, 261 N. W. 884, 100 A. L. R. 1204, certiorari denied, 297 U. S. 720, 56 S. Ct. 598, 80 L. Ed. 1004, that court held that income from stock owned by a nonresident corporation had its source at the domicile of the owner. After those decisions, the Wisconsin Legislature imposed a tax on corporations doing business in that state for the privilege of paying dividends to nonresidents to the extent the dividends were paid from income earned by the corporations in Wisconsin. That act was not regarded as imposing an income tax, but as an excise tax upon a privilege. Froedtert G. & M. Co. v. Tax Commission, 221 Wis. 225, 265 N. W. 672, 267 N. W. 52, 104 A. L. R. 1478. The statute was sustained and held applicable to a locally licensed foreign corporation. State of Wisconsin v. J. C. Penny Co., 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229. See also International Harvester Co. v. Wisconsin Department of Taxation, 243 Wis. 198, 10 N. W. 2d 169, 11 N. W. 2d 95, which was affirmed in International Harvester Co. v. Wisconsin Department of Taxation, 322 U. S. 435, 64 S. Ct. 1060, 88 L. Ed. 1373.

In Miller v. McColgan, 17 Cal. 2d 432, 110 P. 2d 419, 134 A. L. R. 1424, it was held in effect that dividends and profits from sale received by a resident of California on and from stock in a Philippine corporation, conducting all its business in that country, were taxable in California on the ground that in the absence of express statutory mandate to the contrary, the situs is that of the stock, which is the domicile of the owner, and not that of the activities of the corporation. The question was presented obversely, for it was whether the California citizen was entitled to credit on his California income tax for the amount he had paid as income tax to the Philippine government, the statute allowing credit for taxes paid on income "derived from sources without this state." The court held the income not to have been so derived. It reviewed many analogous decisions, but seems to have been largely influenced by the traditional view that a corporation is an entity distinct from its shareholders, and by the fact that when the income tax act was enacted it was settled law that the taxation of intangibles was subject to the rule of mobilia personam sequuntur. The decision was also influenced as expressly stated, by the fact that the question was one of tax exemption, requiring strict construction against the taxpayer and not one of tax imposition as it was in the Missouri case of Union Electric Co. v. Coale, 347 Mo. 175, 146 S. W. 2d 631, 632. In that case it was held that dividends received by a domestic corporation from a foreign corporation not doing business in Missouri was not income "from sources in this state" within the meaning of the statute, which decision had been reached by the Missouri court under the influence "or governing factor" of a strict construction against the government. As the California court points out, the Missouri opinion made no mention of two contra cases, each of which considered at great length the question of source of income in its relation to the taxable situs of intangibles, viz., Newport Co. v. Wisconsin Tax Com., 219 Wis. 293, 261 N. W. 884, 100 A. L, R. 1204, certiorari denied 297 U. S. 720, 56 S. Ct. 598, 80 L. Ed. 1004, or Domenech v. United Porto Rican Sugar Co., 1 Cir., 62 F. 2d 552, certiorari denied 289 U. S. 739, 53 S. Ct. 656, 77 L. Ed. 1486.

The question arose later in Missouri and was considered anew in Union Electric Co.'s Petition, 349 Mo. 73, 161 S. W. 2d 968, 971, 143 A. L. R. 141. There a do-

mestic corporation had received dividends from stock in a foreign corporation licensed to do business in Missouri and interest on beneficial certificates in companies operating entirely outside the state. The court adhered to its ruling in the first case, supra, and several intervening cases, declined to follow the California Case and continued to hold that the source of income was outside the state and the dividends received by the taxpayer not to be taxable as income in Missouri, the residence of the taxpayer. In reaching that conclusion, the court was of the opinion that in the field of income taxation ''it is important to penetrate beyond legal fictions and academic jurisprudence to the economic realities of the cases.'' This referred to the separateness of a corporation and its stockholders, and regarded the source of the income as being where the corporation's capital was used and employed. It may be observed that the Missouri income tax statute, Sec. 11345, Mo. R. S. A., is different from ours.

These cases, the one in California and the other two in Missouri, are respectively relied on by the contending parties here. Neither is altogether ''on all fours.'' The California court was dealing with the construction of a tax exemption under the broad clause of ''from sources without this state.'' St. 1935, p. 1117, sec. 25(a). The Missouri court was dealing with the broad clause of ''from all sources within this state.'' Mo. R. S. A., sec. 11343. Neither was preceded immediately or (as we have said) was qualified by the restrictive clauses ''business done'' and ''property located'' in the state, as in our Kentucky statute. Nor was it wrapped up in other influential provisions of the two statutes such as we have referred to.

The California conception of taxability at the domicile of the recipient was the same as that of the Wisconsin court in the cases cited that involved a straight-out income tax and not the later statute based upon the ''privilege of paying dividends to nonresidents.'' [17 Cal. 2d 432, 110 P. 2d 423.] Likewise, Goldberg v. Gray, 70 N. D. 663, 297 N. W. 124, holding that the all-inclusive phrase ''income derived from any source whatever'' made the North Dakota citizen liable although he had paid taxes on the same income to Minnesota. The phrase was regarded as broad enough to include both the origin and the situs, being unrestricted by neither. See also

as of like effect Palmer v. State Board of Assessment and Review, 226 Iowa 92, 283 N. W. 415; Ryan v. Commonwealth, 169 Va. 414, 193 S. E. 534.

We cannot follow the reasoning of the Missouri Court, that the source of income represented by dividends is where the capital is used and employed. To follow it to its logical conclusion would require the allocation to every state where the Louisville & Nashville Railroad Co. operates, for it is quite a "legal fiction" to say it is exclusively used and employed in the state where the corporation's chief or home office is situated.

12. It is an issue long closed that the wisdom or expediency of legislation, whether good or bad, is no concern of the courts; nor the consequences except as a test of validity or measure of intent. In interpreting a doubtful word of controlling importance or in construing an ambiguous taxing statute, it is logical to consider the consequences of one or another conception. If one construction reconciles the ambiguity with other provisions of the law clearly expressed, produces uniformity and equality and results in just and equitable treatment, economic stability, practical administration, and gives recognition to the principle of reciprocity between the states, that is the construction to be adjudged. If another construction threatens unconstitutionality (cf. Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445), puts the particular provision out of line with the rest of the Act, results in discrimination, harsh or unjust treatment of taxpayer, such as exacting a confiscatory sum or a sum disproportionate to the benefits derived from the government, and causes a pyramiding of taxes, unsettles administrative policy and reverses contemporaneous construction by the state, raises insuperable administrative difficulties, violates the principles of reciprocity between the states, then that construction should be denied. This is so, for a legislative intent not clearly revealed may be presumed to hold in contemplation the reasonable and probable. If something else was in view, it should not have been left to implication. There will be no assumption of a purpose to visit oppression.

We are of opinion that "sources in this state," as used in the Kentucky Statutes, Sec. 4281b-14, and KRS 141.040, and in Sec. 4281b-32, Kentucky Statutes, KRS 141.120, does not include the receipt of dividends by

54

a foreign corporation on the stock of a domestic corporation where the stock is held solely as an investment or otherwise and has no fair relationship to business done by the foreign corporation or its property located in the state.

The judgment is reversed.

Judge Dawson not sitting.