## Kentucky Tax Commission et al. v. Fourth Avenue Amusement Co.

March 23, 1943.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellants.

Stites & Stites and Norris McPherson for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Fourth Avenue Amusement Company is a Kentucky corporation engaged in the business of operating motion picture theatres in Kentucky and Indiana. In 1936 it operated ten theatres in its own name, four in Kentucky and six in Indiana, and through a wholly owned subsidiary, the Western Indiana Theatres Corporation, an Indiana corporation, operated three theatres in Indiana. Prior to 1936 the Indiana corporation operated at a loss, and the parent company made advancements to it to cover the losses. In 1936 the Indiana corporation realized a profit and paid to the Kentucky corporation a dividend of $20,000. In its corporation income tax return for 1936 the Fourth Avenue Amusement Com-

pany reported the $20,000 dividend, but allocated it outside of Kentucky. The Kentucky Tax Commission ruled that it should be allocated within Kentucky and the tax paid thereon. On September 19, 1940, the company appealed to the Franklin circuit court from an order of the Kentucky Tax Commission assessing a corporation income tax against it on the dividend received from its Indiana subsidiary. In its petition for appeal from the assessment the company alleged that prior to 1936 it purchased all the capital stock of Western Indiana Theatres Corporation, which operated under lease three theatres in Terre Haute; that these theatres were added to the chain of other theatres owned by it; that in 1936 it operated under direct lease four theatres in Louisville, Kentucky, three in LaFayette, Indiana, one in Indianapolis, Indiana, and two in Terre Haute, Indiana, and through its wholly owned subsidiary three theatres in Terre Haute, Indiana. In an agreed stipulation made a part of the petition it was stated that:

> "These latter three theaters in Terre Haute had been brought into the chain in 1929 but there was never any assignment of the leases to the Fourth Avenue Amusement Company. Instead, they were continued in operation under the corporate jurisdiction of Western Indiana Theatres Corporation, even though for all practical purposes they were considered in exactly the same category as any of the other theatres."

A demurrer to the petition was overruled, the Kentucky Tax Commission declined to plead further, and it was adjudged that the assessment of income tax against the Kentucky corporation on the dividends in the sum of $20,000 received by it from the Western Indiana Theatres Corporation was illegal and void, and the assessment was set aside and canceled.

A correct solution of the problem turns on the proper construction of relevant sections of the Income Tax Act. Carroll's Kentucky Statutes, 1936 Edition, sections 4281b-1 to 4281b-39, inclusive, KRS, Chapter 141.

The relevant sections are 14 and 32. The pertinent part of section 14 reads:

> "Every domestic corporation organized under the laws of this State and every foreign corporation doing business in this State * * * shall pay for each

taxable year a tax to be computed by the Department upon the entire net income of such corporation, derived from business done, property located or sources in this State; and such tax is hereby annually levied for each taxable year at the rate of four per cent (4%) of the entire net income of the corporation or the portion thereof taxable within the State, determined as provided in this Act."

Section 32 deals with allocation of corporate income. Part 1 of section 32 allocates within and without the state interest, dividends, rents, and royalties not received in connection with the transaction of business, and part 2 provides:

"If the trade or business of the corporation is carried on entirely within the State, the tax shall be imposed on the entire business income; but, if such trade or business is carried on partly within and partly without the State, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within the State, to be determined in the event separate accounting is impracticable as follows:

"(a) Interest, dividends, rents and royalties (less related expenses) received in connection with business in the State, shall be allocated to the State and where received in connection with business outside of the State shall be allocated outside of the State."

Manifestly it is the purpose of the Act to allocate outside of the state the income of a domestic corporation derived from property owned or business done outside the state.

It is appellants' contention that the three theatres in Terre Haute, Indiana, leased by the Western Indiana Theatres Corporation, were not operated by the appellee which owned none of the leases but owned only the capital stock of the leasing corporation and since the certificates of stock were located in Kentucky, the dividends thereon were received from sources within Kentucky, and were therefore allocable within Kentucky and taxable. The argument substitutes the shadow for the substance. The Indiana corporation was a mere agency or instrumentality of the Kentucky corporation transacting a portion of the latter's business in Indiana. The

admitted facts show that the three theatres originally leased to the Indiana corporation were merely three links in the chain of thirteen links, were operated as parts of a unified business, and for all practical purposes "were considered in exactly the same category as any of the other theatres." The stock of the Indiana corporation was not held by appellee as an investment aside from its regular business, in which event appellants' argument would be pertinent, but as a means of transacting business in Indiana.

Appellants rely chiefly on Miller v. McColgan, 17 Cal. (2d) 432, 110 P. (2d) 419, 426; Wiseman v. Interstate Public Service Company, 191 Ark. 255, 85 S. W. (2d) 700; and Southeast Power & Light Company v. McCarroll, 200 Ark. 565, 140 S. W. (2d) 1001. In the Miller case it was held that dividends on intangibles physically outside the state were taxable to the resident individual, and it was pointed out in the opinion that the taxpayer was not engaged in business in the Philippines where the corporation declaring the dividends was located. The court merely applied the mobilia sequuntur personam rule. In Wiseman v. Interstate Public Service Company and Southeast Power & Light Company v. McCarroll, the Supreme Court of Arkansas held that the taxpayer, in each case a corporation, was a holding company only, and that its stock in foreign corporations was merely a portfolio asset and the receipt of income thereon was business done in Arkansas and taxable. In McCarroll v. Gregory-Robinson-Speas Corporation, 198 Ark. 235, 129 S. W. (2d) 254, 122 A. L. R. 977, where the state sought to collect an income tax upon the entire net income of a domestic corporation which transacted business in other states, the court held the act discriminatory and unconstitutional because foreign corporations doing business in Arkansas were required to pay only upon that portion of their net income represented by business done in Arkansas. In distinguishing this case in the Southeast Power & Light Company case, the court said:

"That case had to do with domestic operating corporations which did business not only within but without the State of Arkansas. It dealt with operating companies and not holding companies. [200 Ark. 565, 140 S. W. (2d) 1003].

A case more nearly in point is In re Union Electric Company of Missouri, 349 Mo. 73, 161 S. W. (2d) 968, 970. In that case the Union Electric Company was a Missouri corporation engaged as a public utility in supplying its customers with electricity and steam. It owned stock in eight foreign corporations and a foreign stock company operated by trustees. It received from these companies in 1937 and 1938 large sums in dividends. The sole question presented was whether or not these dividends constituted income received by the taxpayer from sources within the state under the Missouri Income Tax Act which imposed a tax upon corporate income from sources within that state . Section 11343, R. S. Mo. 1939, Mo. R. S. A. Section 11343. After reviewing many of its own cases and cases from other jurisdictions, including the California and Arkansas cases heretofore referred to, the court held that the dividends received from foreign corporations were not included in the gross income of the Missouri corporation for the purpose of computing its Missouri income tax. In the course of the opinion it was said:

"It is true that for most purposes of corporation law a corporation is considered as a legal person separate and distinct from its shareholders. As such the law considers it the owner of its capital assets. Yet when we penetrate beneath the cloak of legal fiction it is apparent that in the economic sense the real owners of the corporation assets are its shareholders. * * *

"In the field of income taxation in particular it is important to penetrate beyond legal fictions and academic jurisprudence to the economic realities of the cases. It is conceded that the actual expenditure of labor and the actual use of capital which gave rise to the income represented by these dividends took place outside the state of Missouri. We are forced to the conclusion therefore that the source of this income was outside the state and the dividends received by the taxpayer should not be included in its gross income for the purpose of computing its Missouri income tax."

In Union Electric Company v. Coale, 347 Mo. 175, 146 S. W. (2d) 631, 635, the income of the Union Electric Company for the year 1936 was involved. During the

year 1936 it received dividends amounting to more than $3,000,000 on stock of the foreign corporations, and the same argument was made there that appellants make here; that is, the stock certificates were the source of the dividend income. The court said:

"Plaintiff's stock certificates in the foreign companies are nothing more than evidence of ownership, Estel et al. v. Midgard Inv. Co. et al., Mo. App., 46 S. W. (2d) 193; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; 11 Fletcher's Cycl. of Corporations, Per. Ed., Section 5092, and neither the stock certificates nor the shares could be the source of the dividend income. * * *

" 'The source of * * * income is the place where it was produced,' In re Kansas City Star Company [346 Mo. 658], 142 S. W. (2d) 1029, loc. cit. 1037 [130 A. L. R. 1168], and it cannot be said, with sound reason, that the income here concerned was produced in this state."

In the case before us the Fourth Avenue Amusement Company owned all of the stock of the Indiana corporation. The two corporations were engaged in precisely the same type of enterprise. Appellee's ownership of all the capital stock of the Indiana corporation was for the purpose of controlling the policies and operations of that company and using it as a mere adjunct, agency, or instrumentality of the Kentucky corporation in the conduct of the unified business. The income involved had its source in the state of Indiana. It arose out of business transactions there. The facts disclosed by the record convince us that the stockholding in question was an integral part of appellee's business, and that the method of allocation provided by the statute requires that the dividends received from the Indiana corporation should be allocated outside of Kentucky. We think the legislative intent is clear, but if there were any doubt in that respect it would be necessary to keep in view the rule that taxing statutes are construed most strongly against the government and in favor of the taxpayers. Reeves v. Brown-Forman Distillers Corporation, 288 Ky. 677, 127 S. W. (2d) 297; Martin v. F. H. Bee Shows, 271 Ky. 822, 113 S. W. (2d) 448.

The circuit court correctly held that the dividends here involved were not properly included in the gross income of appellee for the purpose of computing its income tax, and the judgment is affirmed.

Whole Court sitting.