## Commonwealth ex rel. Luckett, Commissioner of Revenue, v. Radio Corporation of America.

Dec. 15, 1944.

45

Henry S. Chesnut and Smith & Leary for appellant.

Doolan, Helm, Stites & Wood for appellee.

Ernest Woodward amicus curiae.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This action was instituted by the Commissioner of Revenue of the Commonwealth to recover income taxes, penalties and interest aggregating $98,602.66 over a period of seven years from 1936 to 1942, inclusive, from the Radio Corporation of America (hereinafter referred to as RCA). A general demurrer was sustained to the petition, the Commonwealth declined to plead further, whereupon its petition was dismissed, and it appeals.

The petition avers that RCA is a Delaware corporation with its principal office and place of business located in New York and that it maintains no office or officers in this state; that Ken-Rad Tube & Lamp Company (hereinafter referred to as Ken-Rad) is a Delaware corporation engaged in manufacturing radio tubes with its principal place of business and its chief office located in Owensboro, Ky.; that RCA was the owner of certain letters patent and that it entered into an agreement with

Ken-Rad permitting the latter to manufacture radio tubes under RCA's patent in consideration of certain royalties to be paid it by Ken-Rad on the tubes manufactured. The petition sets out the amount of royalties Ken-Rad paid RCA during each of the 7 years which range in round numbers from $131,000 to $275,000, and then pleads the income tax rate, the interest and penalties as provided by statute and averred a total of $98,602.66 was due the Commonwealth by RCA.

The pertinent parts of our income tax statute read:

KRS 141.040: "Every corporation organized under the laws of this state and every foreign corporation doing business in this state, * * * shall pay for each taxable year a tax * * * upon the entire net income of the corporation derived from business done, property located or sources in this state. This tax shall be at the rate of four percent of the entire net income of the corporation, or the portion thereof taxable within this state, determined as provided in this chapter."

KRS 141.120 (1): "Interest, dividends, rent and royalties not received in connection with the transaction of the business of a corporation, and gains from the sale of property not held, owned or used in connection with its business, less any related expenses, shall be allocated to this state if received from sources within this state. If received from sources outside this state, such income shall be allocated outside this state. The balance of corporate income, hereinafter referred to as business income, shall be allocated to this state and shall be taxable as hereunder set forth. * * *"

KRS 141.120 (2): "If the trade or business of the corporation is carried on entirely within this state, the tax shall be imposed on the entire business income. If the trade or business is carried on partly within and partly without this state, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within this state, to be determined, in the event separate accounting is impracticable, as follows:

"(a) Interest, dividends, rents and royalties, less related expenses, received in connection with business in this state shall be allocated to this state, and that received in connection with business outside of this state shall be allocated outside of this state."

The question before us simply stated is, whether or not the royalties paid RCA by Ken-Rad were received from business done, or from property located in Kentucky, or arose from sources within this state? To answer this three-pronged question it is first necessary to determine the legal aspects of a patent right and of a royalty paid for the use thereof where the owner of the patent has no direct connection with the manufacture of the tubes in Kentucky but relies solely on a contract made in a foreign state for the right to receive royalties.

A patent right is an intangible, incorporeal right granted by the federal government and is as broad as the government's jurisdiction but it has no situs apart from the domicile of the owner. 1 Conflict of Laws (Beale) sec. 104.2, p. 448; 48 C. J. sec. 8, p. 18; Ebsary Gypsum Co. v. Ruby, 256 N. Y. 406, 176 N. E. 820. The patentee receives nothing from the patent statute which he did not have prior to obtaining the patent, and the only right he acquires by virtue of his letters patent is the right to restrain others from manufacturing, using or selling articles covered by his invention. 40 Am. Jur. sec 3, p. 533; Motion Picture Patents Co. v. Universal Film, 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed, 871, L. R. A. 1917 E. 1187, Ann. Cas. 1918 A, 959. A holder of a patent may license another to use it but such license transfers no interest in the patent and is no more than a waiver by the patentee of his right to sue the licensee for an infringement. Elmendorf v. American Combustion Co., 80 N. J. Eq. 461, 85 A 199; Western Union Telegraph Co. v. American Bell Tel. Co., 1 Cir., 125 F. 342; General Talking Pictures Corp. v. Western Electric Co., 304 U. S. 175, 546, 58 S. Ct. 849, 82 L. Ed. 1273.

RCA's only relation with Ken-Rad was that the two companies entered into a contract in New York wherein RCA permitted Ken-Rad to use its patent in manufacturing tubes in Kentucky in consideration of the latter paying certain royalties to the former. RCA had no hand whatever in Ken-Rad's manufacturing business in Kentucky. By no stretch of the imagination can it be said that RCA was doing business in Kentucky by receiving royalties in New York under a contract entered into in that state with a corporation domiciled in Kentucky. In reality the royalties are paid not by reason of the tubes being manufactured in Kentucky (they would have been

due just the same had the tubes been manufactured elsewhere), but are paid solely by virtue of the contract, which in effect was that in consideration of the royalties to be paid by Ken-Rad there would be no suit brought by RCA for infringement of its patent. Nor did RCA bring its patent into this state. A patent is an intangible right which has its situs at the domicile of its owner, in this instance New York. And as RCA took no part in Ken-Rad's manufacturing business in Kentucky, it did not bring its patent into this state merely by executing the royalty contract in New York.

The Commonwealth most earnestly insists that should we hold that RCA was not doing business in Kentucky and that it had no property located in this state, yet there is no escape from the conclusion that the royalties arose from sources in Kentucky, relying largely on Sabatini v. Commissioner, 2 Cir., 98 F. 2d 753. Sabatini, an author residing in England, contracted with a Boston firm to publish certain of his works under copyrights issued by the United States. It is true in that opinion the court said that the royalties received from the copyright fell within Sabatini's gross income from sources within the United States, but it did not say such royalties could be taxed as Sabatini's income by the several states in which his books were sold. Likewise, RCA's income from the royalties here can be said to arise from sources within the United States or even within the state of its domicile, New York, but they cannot be said to arise from sources within Kentucky. We must not lose sight of the fact that the taxing power of Congress is co-extensive with the entire United States while the limitation on a state's taxing power is confined to state boundaries, Miller v. McColgan 17 Cal. 2d 432, 110 P. 2d 419, 134 A. L. R. 1424; United States v. Bennett, 232 U. S. 299, 34 S. Ct. 433, 58 L. Ed. 612; Cook v. Tait, 265 U. S. 47, 44 S. Ct. 444, 68 L. Ed. 895, and that it is customary for income tax statutes to make a distinction between corporations and individuals. Goldberg v. Gray, 70 N. D. 663, 297 N. W. 124.

The source of the royalties was not in Kentucky where the tubes happen to be manufactured, but was in New York where the contract was signed and the royalties were payable. The contract created a debt or obligation on the part of Ken-Rad, whose domicile was in Kentucky, to RCA, whose domicile was in New York, and

this debt is intangible, personal property which under the rule of mobila sequuntur personam has its legal situs at the domicile of the creditor. Curry v. McCanless, 307 U. S. 357, 83 L. Ed. 1339, 59 S. Ct. 900, 123 A. L. R. 162. There is an exception to the mobilia rule, which is that intangibles may be so employed in business in a state other than the owner's domicile as to acquire a business situs therein. American Barge Line Co. v. Board of Supervisors, 246 Ky. 573, 55 S. W. 2d 416; Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143; Board of Tax Supervisors v. Baldwin Piano Co., 296 Ky. 673, 178 S. W. 2d 212. But an examination of these authorities will show that neither the debt due under the contract nor the patent acquired a business situs in Kentucky.

Let us suppose for the moment that instead of this contract providing for a royalty payable on the tubes as they were manufactured, that the parties had anticipated the number of tubes which would have been made during the life of the patent and had agreed that the royalties would amount to $2,000,000 and that the contract recited Ken-Rad would pay for the license that sum at the rate of $200,000 per year for 10 years and executed in New York a series of notes covering such indebtedness. It is immediately apparent that in such circumstances it could not be argued with reason that the $200,000 payable yearly would be subject to Kentucky's income tax statute as having arisen from sources within this state. In legal effect there is no difference between the hypothetical contract and the actual one now before us.

Hazeltine Corp. v. McColgan, decided by the Superior Court of Sacramento County, California, is exactly on all fours with the case before us. While this is not a decision by a court of last resort and a copy of the opinion was appended to appellee's brief, it is a thoroughly considered and well-reasoned opinion in which many leading cases are carefully reviewed. The court there reached the conclusion that the royalties paid to a foreign corporation (not doing business in that state) under a contract granting a California corporation the right to use certain patents were not income from sources within the State of California. It may be noted that the Tax Commissioner of California acquiesced in the opinion and prosecuted no appeal, and for this reason the Supreme Court of California did not write on the subject.

The Commonwealth relies upon Greene v. Kentenia Corp., 175 Ky. 661, 194 S. W. 820; Larkin Co. v. Com., 172 Ky. 106, 189 S. W. 3; City of Cincinnati v. Com., 292 Ky. 597, 167 S. W. 2d 709, as sustaining its contention that RCA was doing business in Kentucky. These three cases are clearly distinguishable from the instant one. The Kentenia Corporation had funds invested in mineral and timber lands in this state with the intention of developing same or else selling them at a profit, which we held was doing business in Kentucky. The City of Cincinnati as the owner and lessor of a railroad system located in Kentucky was held to be doing business in this state. We can see no application of the Larkin case to the one at bar as it was there held that the corporation was not doing business in Kentucky although it had a "traveling show-room" passing through the state. It seems that nothing was sold from this "showroom" but that orders were sent to Buffalo, N. Y., and when approved by the house there, the goods were shipped into this state. In these circumstances this court held that the company was not required to qualify under KS sec 571. That opinion approved a quotation from appellant's brief, "When in motion, then the owners are said to be in business." But in the instant case RCA had neither its patent nor its capital "in motion" in Kentucky and it was not doing business here.

Fox Film Corp. v. Doyal, 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010, sheds no light on the question before us as it was there admitted the appellant, a New York corporation, was engaged in business in Georgia. That opinion decided that royalties received from a copyright or from letters patent were not exempt from taxation because they arose from a right granted by the federal government inasmuch as such right had no connection with governmental functions. Nor is assistance to be gained from Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S. W. 2d 42. There, the Kentucky corporation had a subsidiary conducting theaters in Indiana and it was held that the dividends received from the Indiana subsidiary should be allocated outside of Kentucky and should not be included in the income of the Kentucky corporation for the purpose of computing its income tax.

As RCA is not liable for the income tax sought to

be collected from it, the trial judge properly sustained a demurrer to the petition and his judgment is affirmed.

Whole Court sitting.

Judges Cammack and Thomas dissenting.