## Tennessee Gas & Transmission Co. v. Commonwealth et al.

June 8, 1948.

Rehearing denied December 17, 1948.

Doolan, Helm, Stites & Wood for appellant.

A. E. Funk, Attorney General, and Hal Williams, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appeal is from a judgment sustaining a final order of the Tax Commission holding a deficiency in appellant's income tax for the year 1945. The court held that the transcript of the proceedings before the Commission did not show appellant entitled to the relief sought and dismissed the appeal. Relief sought was a reversal of the order of the Commission. The question presented is purely one of construction of taxing statutes and their application to undisputed facts.

Appellant, a Tennessee corporation with its chief place of business in Houston, Texas, owns and operates a pipe line originating in Texas, passing through intervening states into Kentucky and ending in West Virginia. It purchases gas in Texas and pipes it to customers in Kentucky and West Virginia. In 1945 its customers were five utility companies. It does not sell directly to consumers or transport for other producers, but delivers gas in Kentucky to four customers for distribution. Under one contract to the United Fuel Gas Company; under another to the Louisville Gas and Electric Company, delivered at a point in Marion County, thence piped into Louisville where it is distributed. The third and fourth sales contracts, with the Taylor-Green Gas Company, and the Kentucky Natural Gas Corporation are similar to the second one, except as to delivery points. These three classes of deliveries constitute the company's sales for the calendar year in question. The total deliveries in 1945 in and out of Kentucky, in dollar volume, amount to $14,303,076.63, and of this sum Kentucky deliveries amounted to 6.01 per centum of the whole.

Appellant asserted that its sole activities in Kentucky are the maintenance of its pipelines and necessary compressors, and the delivery of gas at stations under the contracts; that it maintains no office in this state other than the statutory office required for process service. KRS 271.385 (2). As bearing on the question presented, appellant filed affidavits of its officers setting out the following facts:

Its principal place of business is in Houston, Texas; that its contract with the U. F. G. Company was nego-

tiated in Chicago and New York City, executed by appellant in Chicago, and by U. F. G. Company in Charleston, West Virginia. The one with L. G. & E. Company was negotiated, and by appellant executed in Houston and by its customer in Louisville. The Taylor-Green contract was negotiated in Houston and Charleston, executed by appellant in Houston and by its customer in Campbellsville, Kentucky. The other contract was negotiated in Houston and Washington, D. C., executed by appellant in Houston, and by the customer in Owensboro, Kentucky.

With appellant's return for 1945 it enclosed a check for $474.75, this sum based on its application of the tax statutes. Upon audit by the Division it conceived the tax to be $1,311.34, its adjusted statement showing a balance due of $836.51. This finding was upheld by the Commission and the court, it being contended before those bodies, as here, that under Sec. 141.120 (3) (e), KRS, gas sold or delivered in Kentucky may not be treated as "Kentucky Sales or Receipts," for the purpose of apportioning any part of taxpayers income to Kentucky. The record before us does not contain appellant's return, but it may be assumed that the payment of the $473.73 was on taxables other than "Kentucky Sales and Receipts." There is no dispute as to this item.

In making its return appellant fixed its Kentucky sales or receipts at zero; the authorities increased the percentage of appellant's income allocable to Kentucky by lifting Kentucky sales and receipts to $3,171,416.40, thus increasing the "Business ratio percentage," from zero to 22.17 per cent, and the apportionment factor between Kentucky and other states from 11.58 to 22.67 per cent, resulting in the tax increase.

Statutes: Ch. 141, KRS Sec. 141.040. "Every corporation organized under the laws of this state and every foreign corporation doing business in this state * * * shall pay for each taxable year a tax to be computed by the Department of Revenue upon the entire net income of the corporation derived from business done, property located or sources in this state. This tax shall be at the rate of four per cent of the entire net income of the

corporation, or the portion thereof taxable within this state, determined as provided in this chapter.''

141.120 (3) (b). ''Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within this state, shall be taken to be such percentage of the total of such income as the value of the tangible property and business within the state bears to the value of the total tangible property and total business, the percentage of tangible property and of business being separately determined as hereinafter provided, and the two percentages averaged.''

141.120 (3) (d). ''The business of the corporation shall be measured by the amount of all receipts during the year from sales and other sources connected with the business, excluding receipts from the sales of capital assets and property not sold in the regular course and receipts from interest, dividends, rents and royalties, separately allocated as above provided.''

Following is the section relied upon by appellant, 141.120 (3) (e): ''Receipts from sales and other sources shall be assigned to the office, agency or place of business of the corporation at which the transaction giving rise to the receipts are chiefly handled and attended to with respect to the negotiation and execution.''

Appellant conceding the obvious that ''it be doing business in Kentucky and has property in the State,'' contends that under some of our decisions ''the income here in question is from a source outside Kentucky.'' At the outset it appears to us that such application of the section of the statute relied on would indeed result in an anomalous situation. The board would be compelled to determine whether or not the income from business done in Kentucky would have to be assigned to New York, Chicago, Washington, D. C., or other states where officers sat and negotiated, or where the final agreement was in part executed.

Appellant to some extent relies upon the general rule that taxing statutes must be strictly interpreted and, in case of doubt, in favor of the taxpayer. Barnes v. Indian Refining Co., 280 Ky. 811, 134 S. W. 2d 620. When we observe the taxing sections of the statute there

is no doubt that the legislature intended to place a tax on income derived from business done or sales and receipts from business done in Kentucky both as to domestic, and foreign corporations doing business in the state.

There is another general rule to the effect that an exempting statute must be construed most strongly against the one claiming immunity, the burden being on the claimant to show clearly that he is within the terms. Gray v. Methodist Episcopal Church, South, 272 Ky. 646, 114 S. W. 2d 1141. While the section relied upon by appellant as it stands is not in so many words an exempting statute, its application here as contended for, would make it an exempting, commuting or immunizing statute. Its classification as such finds foundation in Bigelow v. Reeves, Commissioner, 285 Ky. 831, 149 S. W. 2d 499. Such application would justify a conclusion that it is violative of the exempting and uniformity of taxation provisions of Secs. 170-172, Constitution, Kesserling v. Bonnycastle Club, 299 Ky. 585, 186 S. W. 2d 402.

Appellant cites as authority for the proposition that where the source of income "is a contract chiefly negotiated and executed outside Kentucky, such income is not allocable to Kentucky for the purpose of computing taxpayers net income," Commonwealth v. Radio Corporation of America, 299 Ky. 44, 184 S. W. 2d 250; Atlantic Coast Line R. R. v. Commonwealth, 302 Ky. 36, 193 S. W. 2d 749; Kentucky Tax Comm. v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S. W. 2d 42, and cases from foreign jurisdictions. The latter do not appear applicable, and the Kentucky cases are distinguishable. In none of them was there shown to be an effort to allocate to Kentucky the income from business done in Kentucky or sales or receipts from business carried on in Kentucky. In the Radio case the only relationship of Radio Corporation with Ken-Rad, the manufacturing corporation (in Kentucky) was under a contract made in New York, permitting Ken-Rad to use the former's patent in the manufacture of radio tubes. The question was whether or not royalties paid to RCA were received from business done in Kentucky or arose from sources without the state. We found that RCA was not doing business in Kentucky by accepting the royalties on the use of its patents, paid "not by reason of the tubes being manufactured in Kentucky," (299 Ky. 44, 184 S. W. 2d

252), but solely by virtue of the contract to use its patent which was not brought into this state, and as it did not do so took "no part in Ken-Rad's Manufacturing Business," we held its income from royalties not taxable here. The difference is apparent, since appellant here is actually doing business in Kentucky, and that business is the source of its taxable income.

The Fourth Avenue Amusement Company case is distinguishable. The company, a Kentucky corporation was operating picture shows in Kentucky and Indiana, four in Kentucky and six in Indiana. Through a subsidiary Indiana Corporation three were operated in an Indiana city, and Kentucky was claiming that the three theaters leased to the Indiana corporation were operated by appellant, which owned none of the leases, but owned the capital stock of the leasing corporation; that since the certificates of stock were located here, the dividends were received from sources in Kentucky, hence allocable and taxable here. We held to the contrary applying to the facts the provisions of KRS 141.120(2) (a) saying: "Manifestly it is the purpose of the Act to allocate outside the state the income of a domestic corporation derived from property owned or business done outside the state." (293 Ky. 668, 170 S. W. 2d 43)

The Atlantic Coast Line case is so readily distinguishable that it is unnecessary to comment, further than to say that the reasoning therein if conversely applied to the facts here would somewhat upset the theory or ground on which appellant contends non-liability.

As we enter the final stage we cannot escape the idea that enjoyment of the right to carry on business in Kentucky, and the right to invoke the protection of its laws are inseparable from the responsibility for sharing the burden of taxation or the cost of government. Reynolds Metal Co. v. Martin, 269 Ky. 378, 107 S. W. 2d 251. Our decision should depend not upon a question of form, construction or definition, but upon the practical operation and effect of the law. To give the meaning insisted upon by appellant would be to give all effect to a doubtful statute in the face of others which are not so.

The income sought to be taxed is upon the "entire net income of the corporation derived from business done" in this state; the business done is the sale of tan-

gible personal property, natural gas. Crystal Ice & Cold Storage Co. v. Marion Gas Co., 35 Ind. App. 295, 74 N. E. 15. Under the contracts, taking the one with L. G. & E. Co. as exemplary, the gas is delivered to the customer in Kentucky, and title remains in appellant until delivery; we agree with counsel that the place of delivery is not controlling, but we do not agree that the place of negotiation, leading up to the executed contract, is controlling. It is the business done, the sales in Kentucky which fastens the tax, the sale itself, the fulfilled contract, as distinguished from an executory contract.

We are not sure that we are called upon to undertake to say what was the intended meaning of Sec. 141.-120(3) (e). However, we are a little curious to know what effect is to be given to the word "assigned," when the word "allocated" is used in reaching the taxable net income. It may be that the legislature intended the section to refer only to such items as are excluded under a part of (d) of that section.

Appellant's construction would interpolate, and omit some of the words used; it would have the section read "receipts from sales shall be assigned to the place where the contract to deliver and sell is negotiated." Under this any foreign corporation carrying on business in Kentucky could have its officers meet its prospective customers in other states and negotiate and avoid the payment of tax on net income derived from business done in Kentucky.

We think there should be more emphasis on the words "transactions giving rise to the receipts," than on "negotiations." The *transactions* giving rise to the receipts were chiefly executed in this state. The signing of the contract by the customer, the delivery of the gas at the point of delivery; the transfer of title, were transactions chiefly handled in Kentucky with respect to execution. So it is not the contract negotiation which controls, but the total of the transactions which give rise to the receipts. Here the place of sale, the source of receipts, the business done was and is Kentucky. That these are factors in making allocation or apportionment in reaching the percentage of sales attributable to business within this state is made clear by Sec. 141.120 (3) (b), and this is the formula adopted by the Commission

ever since the law was enacted in 1936, and as far as our observation goes no corporation has heretofore insisted on the application of Sec. 141.120 (3) (e) to Kentucky sales or receipts. The Commission has evidently construed 141.120 (3) (e) to relate to what is termed "non-business income," assignable to its source either in or out of Kentucky. Income Tax Law and Regulations, 1943 p. 83 et seq.

A careful consideration of the record before us leads to the conclusion that the chancellor correctly dismissed the petition for appeal and the judgment is affirmed.