**SQUARE D COMPANY, Appellant,**

**v.**

**KENTUCKY BOARD OF TAX APPEALS**
**et al., Appellees.**

**GENERAL REFRACTORIES COMPANY,**
**Appellant,**

**v.**

**KENTUCKY BOARD OF TAX APPEALS,**
**formerly Kentucky Tax Commission, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1967.

Rehearings Denied June 30, 1967.

Michael L. Ades, John L. Davis, Stoll, Keenon & Park, Lexington, for appellant Square D Co.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for appellant General Refractories Co.

William A. MacKenzie, Jones, Ewen, MacKenzie & Peden, Louisville, Thomas C. Carroll, Louisville, Paul E. Hayes, Prestonsburg, Special Counsel, Robert Matthews, Atty. Gen., William S. Riley, Asst. Atty. Gen., Frankfort, for appellees.

Walter H. Beaman, Jr., Associate Tax Counsel, General Electric Co., New York City, Sandidge, Holbrook, Craig & Hager, John S. Hager, Owensboro, of counsel, for amicus curiae, General Electric Co.

CLAY, Commissioner.

The appeals in these two cases have been consolidated and involve similar questions. Both appellants contend the circuit court erroneously upheld orders of the Kentucky Tax Commission assessing additional income taxes. The years involved are from 1957 to 1961.

Both appellants are foreign corporations doing business in Kentucky. Neither has its principal office or "commercial domicile" in this state. Each owns all of the capital stock of one or more foreign corporations. The basic question is whether the dividend income from these wholly owned corporations must be included in appellants' taxable net income, for the purpose of apportioning income taxes payable to the State of Kentucky, under the provisions of KRS Chapter 141 in effect during the tax years involved. Before reaching that question, we will dispose of two contentions which attack the general statutory scheme.

The first contention made is that KRS Chapter 141 is unconstitutional as denying appellants the equal protection of the law because it taxes income from intangibles owned by a foreign corporation upon a basis different from that of a nonresident individual. It was long ago held that corporations and individuals may be placed in different categories for tax purposes without violating constitutional limitations. Flint v. Stone Tracy Co. et al., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389. See also Madden v. Commonwealth of Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590. In addition, administrative problems of computing and collecting this tax furnish a reasonable basis for separately classifying foreign corporations and nonresident individuals.

The next contention is that it is unconstitutional for the state to tax income from property or activities which have no relationship to the doing of business in Kentucky. As we will hereinafter interpret the applicable statutes, they do not produce such a result.

KRS 141.040 levies a tax upon the "taxable net income" of foreign corporations doing business in this state (with certain exceptions). KRS 141.010(11) defines "taxable net income" (of corporations) as " 'net income' derived from business done, property located, activities or sources in this state * * *." When a corporation is engaged in integrated business activities both within and without Kentucky and it is impossible or not feasible accurately to

account for and segregate the specific Kentucky income, the legislature under KRS 141.120 has provided a method and a formula for allocating to Kentucky a proportionate share of the taxable net income. Appellant corporations fall within this class, and they do not question the right of the Commonwealth, in this apportionment procedure, to include income realized from interrelated business activities carried on outside this state. The only income they contend cannot be included in computing the overall taxable net income for apportionment purposes is the separately identifiable dividend income from wholly owned corporate subsidiaries operating in foreign jurisdictions.

With respect to appellant Square D Company, the Kentucky Tax Commission (now the Kentucky Board of Tax Appeals) made the following findings:

"Appellant is a Michigan corporation doing business both in and outside the State of Kentucky. Its principal business is the manufacture and sale of electrical equipment.

"Appellant owns all the capital stock of Square D Company of Canada, Limited, and of Square D de Mexico, S.A. Both of these subsidiaries are engaged in the same type of business in Canada and Mexico, respectively, as appellant is in the United States. The two subsidiaries have interlocking directors and officers with appellant. Appellant sells them parts and know-how. The two subsidiaries enable appellant to open up and maintain foreign markets and to promote sales of appellant's products. They act as the alter ego of appellant in Canada and Mexico."

Appellant, General Refractories Company (hereinafter referred to as "General"), is a Pennsylvania corporation having its principal office in Philadelphia. Its operating business is the manufacture and sale of fire brick, with plants in Kentucky and other states. In 1950, after extensive negotiations, General purchased all the stock of an Austrian corporation engaged in the mining, processing and sale of magnesite, an essential ingredient in the manufacture of "basic brick". This company also manufactured and sold finished brick. Under a working agreement between General and its Austrian subsidiary, General licensed the Austrian company to use certain of its patents, and also sent personnel to furnish technical advice and assistance. In return the Austrian company shipped to General, from time to time, substantial amounts of magnesite. There is some controversy as to whether these shipments should be classified as "royalties" or "dividends", but we think this immaterial. Since the value of this magnesite was readily ascertainable, it was treated by General as, and constituted separately identifiable income from the Austrian source.

The taxing authorities invoke KRS 141.-120 in the following manner. Section (2) requires each of the taxpayers (the appellant foreign corporations) to make a Kentucky return showing *all* of its "net income" for any particular taxable year. The first sentence of section (3) provides:

"There shall be deducted from the net income for the taxable year the net amounts of income received from the ownership, holding, use, or sale of property *not* held, owned or used *in the ordinary and regular course of the corporation's business.* (Emphasis added.)

Section (4) provides for apportioning the *remainder* of the income (after the above deductions). It is argued that since the dividend income in question is deductible *only* if it falls within the "nonbusiness" category, and since it is *not* "nonbusiness" income (allocable to another state), it must be included in the apportionment formula.

 A vigorous battle has raged over the issue of whether appellants' dividend income falls within the "business" or "nonbusiness" category under KRS 141.120(3) (above quoted) and this problem has be-

clouded the deeper issue of the state's right and intent to reach for a portion of this income. In a realistic sense, any income realized by a corporation arising out of an authorized business transaction is "business" income. Assuming, however, that a valid distinction can be drawn between what might better be termed "operating" and "nonoperating" income, we do not believe the dividend income of either appellant falls within the latter class.

As we read General's brief, such a claim is not seriously pressed. Surely General would not have engaged in such extentive and complex negotiations to acquire all of the capital stock of its Austrian subsidiary simply to invest its surplus capital for a "nonbusiness" purpose. By the same token, Square D would not have acquired control of its Canadian and Mexican subsidiaries simply to realize a dividend return on its investment.

■ The acquisition of the stock in the subsidiaries by the appellant corporations constituted an investment in intangible property which served to further their regular business operations. Whatever might constitute a "nonbusiness" investment under KRS 141.120(3), we are convinced that appellants owned and used this stock "in the ordinary and regular course of the corporation's business". Consequently appellants cannot escape through the "nonbusiness" hatch. But this does not, as the taxing authorities would have it do, automatically convert this income into "taxable net income" in which Kentucky rightfully may claim a proportionate share.

■ The confusion which has permeated this controversy arises from the concept that KRS 141.120(3), in exempting certain "nonbusiness" income from the apportionment formula, thereby *requires* the inclusion of all "business" income, regardless of its source or relationship to the Kentucky operations of the foreign corporate taxpayers. This conclusion is not a sound one in the light of constitutional limi-

tations and a fair interpretation of "taxable net income" as defined in KRS 141.010(11).

■ Our point of departure is the fundamental proposition that it is beyond the power of a state to tax property located in other states because such taxation would violate either, or both, the commerce clause (Art. 1, sec. 8) or the due process requirements (Amend. XIV, sec. 1) of the Constitution of the United States. See Western Union Tel. Co. v. State of Kansas, 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; Ludwig v. Western Union Telegraph Co., 216 U.S. 146, 30 S.Ct. 280, 54 L.Ed. 423; Looney v. Crane Co., 245 U.S. 178, 38 S.Ct. 85, 62 L.Ed. 230; International Paper Co. v. Commonwealth of Massachusetts, 246 U.S. 135, 38 S.Ct. 292, 62 L.Ed. 624, Ann. Cas.1918C, 617; Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782; Alpha Portland Cement Co. v. Commonwealth of Massachusetts, 268 U.S. 203, 45 S.Ct. 477, 69 L.Ed. 916, 44 A.L.R. 1219; Connecticut General Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673; Newport Co. v. Wisconsin Tax Commission, 219 Wis. 293, 261 N.W. 884, 100 A.L.R. 1204. The taxing authorities do not question this principle, and acknowledge that the foreign income indirectly sought to be taxed under the apportionment formula must fairly be proportionately attributable to sources in or business carried on in Kentucky.

The fact that the state is not directly attempting to tax the dividend income here in controversy, but is only using it in measuring the total income of appellants for the purpose of fixing an apportionable share attributable to Kentucky operations, does not avoid the prohibition against taxing earnings, originating in a foreign jurisdiction, which have no substantial relationship to sources or business carried on in Kentucky. In commenting upon the North Carolina apportionment statute (which has the same objective as ours), the Supreme Court of North Carolina in Gulf Oil Cor-

poration v. Clayton, 267 N.C. 15, 147 S.E.2d 522, 526, stated:

"Such apportionment is designed to meet the due process requirement that a state show a sufficient nexus between such a tax and the transaction within a state for which the tax is an exaction, and the proscriptions of the Commerce Clause of the Federal Constitution which permit a state to tax only that part of a corporation's net income from multistate operations which is attributable to earnings within the taxing state."

Cited in that case as recognizing the constitutional provisions which limit the scope of apportionable income taxation were the following cases decided by the United States Supreme Court: Hans Rees' Sons v. State of North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879; Norfolk & W. R. Co. v. State of North Carolina, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090; Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421.

It thus becomes apparent that Kentucky cannot tax, either directly or indirectly, separable income of a foreign corporation (whether characterized as "business" or "nonbusiness") which was not produced in some recognizable sense by business activities in Kentucky. We do not believe the statutes before us seek to do that. As stated in Atlantic Coast Line R. Co. v. Commonwealth, 302 Ky. 36, 193 S.W. 2d 749, page 754, construing KRS 141.120 as it existed prior to amendment in 1954:

"* * * the whole aim and purpose of the statute as it relates to business income is clearly indicated to be a fair and just relationship to the *source*. The

basic idea stands fairly clear to secure allocation to this state of income arising from something done or something owned or something having a taxable situs in Kentucky, whether it is from an investment purely or is the product of activity." (Emphasis added.)

It is evident to us from the briefs filed by appellee and the findings of the Kentucky Tax Commission that the taxing authorities considered it necessary to do more than establish that the dividend income in controversy constituted "business" income. There is an attempt to show that the relationship between appellants and their subsidiaries was of such a nature as to create a "unitary" operation. It is conceded on both sides that if such existed, then the dividend income properly must be included in the apportionment formula. Thus our ultimate question is not whether the corporate relationships gave rise to "business" income but whether they so integrated appellants' overall business operations that the Kentucky activity fairly could be said to have contributed to the *production* of that income. If not, then no part of that income was *derived* from the business activities in Kentucky.

An Oregon Tax Commission Regulation quoted in John I. Haas, Inc. v. Ellis, 227 Or. 170, 361 P.2d 820, 822, defines a "unitary business" thus:

"* * * The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component parts of which are *too closely connected and necessary to each other to justify division or separate consideration as independent units.* * * * Basically, if the operation of a business within Oregon *is dependent on* or *contributes to* the operation of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method. * * *" (Emphasis added.)

Or stated another way:

"A multi-state business is unitary when the operations conducted in one state benefit and are benefited by the operations conducted in another state or states. The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such relationship, the business is unitary. Stated another way, *the test is whether a business' various parts are interdependent and of mutual benefit so as to form one business rather than several business entities and not whether the operating experience of the parts is the same in all places."* (Emphasis added.)

Crawford Mfg. Co. v. State Commission of Rev. and Tax., 180 Kan. 352, 304 P.2d 504, 510.

It has been said:

"The general approach to this problem has been analogous to that embodied in the 'unit rule' theory developed in connection with other tax problems. It is the fact that the total income is derived from a unitary business carried on in part within a state, that justifies the use of that total income as the basis for computing the amount thereof allocable to that state. *No income accruing to the same taxpayer from any source not a part of such unitary business can be included in the basic income that is to be apportioned."* (Emphasis added.)

Rottschaefer, "State Jurisdiction of Income", 44 Harvard Law Review 1075, 1081.

Although the specific question before us was not there directly presented, Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S.W.2d 42, presents an example of what might be considered a "unitary" business. A Kentucky corporation, engaged in operating a chain of motion picture theatres, had a wholly owned subsidiary in Indiana. It was held that the theatres leased by the Indiana corporation were simply links in a chain, and that the ownership of its capital stock was for the purpose of controlling the policies and operations of the Indiana corporation and using it as an agency or instrumentality in the conduct of the Kentucky corporation's unified business. (This finding was in favor of the taxpayer.)

Another example of a "unitary" operation appears in Edison California Stores, Inc. v. McColgan, 30 Cal.2d 472, 183 P.2d 16. A California corporation was one of fifteen subsidiary corporations whose capital stock was owned by a Delaware corporation. All the subsidiaries were engaged in the same business and all the officers and directors lived in St. Louis where there were maintained a central management division, a central purchasing department, and other central departments. The main accounting records for all subsidiaries were kept there. The court found that there was not only unity of ownership, but unity of operation and unity in the centralized executive force.

■ On the other hand, the overall operation of related businesses in different states, or the unity of ownership of stock in separate corporations engaged in a related or similar business, does not itself create the required *integration* of business operations as to justify a state in claiming a proportionate share of the income from foreign sources. In Standard Oil Co. of Indiana v. Thoresen, 8 Cir., 29 F.2d 708, an Indiana corporation engaged in the business in North Dakota of marketing refined oil products. In other states it produced and refined crude oil. North Dakota sought to levy an income tax upon a proportionate share of the company's income from all of its operations. The court held that North Dakota could not constitutionally so tax the income from foreign sources because the foreign operations, though related, were not so integrated with the busi-

ness *carried on in North Dakota* as to constitute a "unitary" operation.

In American Bakeries Company v. Johnson, 259 N.C. 419, 131 S.E.2d 1, North Carolina sought to tax a foreign corporation under a statutory apportionment scheme similar to ours. The corporation was engaged in the wholesale bakery business in North Carolina and owned stock in a subsidiary in New York which was engaged in the retail bakery business. Though it was recognized that the parent corporation controlled and supervised its subsidiary engaged in a similar and related business, it was held that no part of the earnings of the New York subsidiary could be attributed to the business conducted or transacted in North Carolina.

In Gulf Oil Corporation v. Clayton, 267 N.C. 15, 147 S.E.2d 522, North Carolina levied an income tax on a Pennsylvania corporation engaged in producing oil and gas and refining, transporting and marketing petroleum products. In North Carolina it marketed refined petroleum products. It owned subsidiaries in other states and foreign countries engaged in producing, refining and selling crude oil. The North Carolina statute, G.S. § 105–134, provided as a basis for apportionment the entire net income of the corporation, including dividends from subsidiary corporations "having business transactions with or being engaged in the same or similar type of business". The court held that the statute could not be construed to reach this dividend income from foreign sources because there was not the required unitary operation. The court said (page 528 of 147 S.E.2d):

> "The test then is not solely whether the business of a foreign subsidiary is *similar* to that in which the domesticated parent is engaging in North Carolina or elsewhere, or whether *it has had business transactions* with the parent elsewhere in the world. Conceding both similarity of businesses and intercorporate transactions outside the State, yet the dividend income which the subsidiary

pays the parent cannot be constitutionally allocated to North Carolina and prorated for income taxation unless (1) it is attributable to business activities within this jurisdiction, or (2) the activities of the corporations are so interrelated as to make it *impossible to identify the various sources of the taxpayer's total earnings with reasonable certainty.* Maxwell, Comr. v. Kent-Coffey Mfg. Co., 204 N.C. 365, 168 S.E. 397, 90 A.L.R. 476. Thus, it is only when the parent and subsidiary are engaged in a 'unitary business' that G.S. § 105–134(2) (a) may be constitutionally applied without reference to whether dividend income is attributable to transactions within the taxing state. In purporting to tax dividends from subsidiaries 'having business transactions with or engaged in the same or similar type of business as the taxpayer,' the Legislature was undoubtedly attempting to describe a unitary business in terms of its two most common indicia. In its application to such a business, the statute is clearly constitutional. We do not assume that the Legislature intended it to refer to any situation to which its application would be unconstitutional." (Emphasis added.)

Even though subsidiaries are engaged in a similar or related business, the corporate separation must be recognized unless it is a mere sham or the subsidiaries' operations lose their independent identity by reason of exceptional integrated business relationships. See Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N.W.2d 728. We can discover no basis for a determination that appellants' relationships with their subsidiaries were of such a character as to justify ignoring the corporate identities and treating the independent operations as a "unitary" business.

Like the Supreme Court of North Carolina, we are not inclined to construe the apportionment section of our statutes as expanding beyond constitutional limits the basis of taxation set forth in KRS 141.010,

which requires the taxable net income to be derived from business, property, activities or sources in Kentucky. No part of the Austrian, Canadian or Mexican incomes can be said to have been derived from Kentucky operations unless the apparently independent foreign activities were so integrated and interrelated with those in Kentucky that the separate sources cannot be reasonably and separately identified. We do not think this can be said of any of the dividend (or "royalty") income here in controversy.

■■■ If there was any doubt about our conclusion in this rather elusive field of tax law, we would be required to construe these statutes most strongly against the government and in favor of the taxpayers. Reeves v. Brown-Forman Distillers Corporation, 288 Ky. 677, 157 S.W. 2d 297; Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S.W.2d 42; Atlantic Coast Line R. Co. v. Commonwealth, 302 Ky. 36, 193 S.W.2d 749. Where there is a serious question as to the constitutional right of the state to tax income having a foreign source, we think the state has the burden of showing by convincing evidence that the separately identifiable foreign income (in the form of dividends or otherwise) has a significant source in Kentucky by reason of integrated operations which are not fairly severable. This does not appear here.

■■ A minor problem is presented with respect to the mechanical treatment of this dividend income which properly may not be taken into account when applying the apportionment formula. Under the Department of Revenue income tax form all income is listed, and under Schedule N "dividends" are listed to be deducted as "nonbusiness" income. This form has been a principal source of confusion in this case because it indicates that dividend income is deductible because, and only because, it is in the "nonbusiness" category. As we have attempted to show, the determining factor is not whether the dividend income may be characterized as "business" or "nonbusiness", but whether it arises from a source integrated with business carried on in Kentucky. If properly includable as "gross income", it should be deductible (before the apportionment formula is applied) as nontaxable dividend income.

Other questions are raised with respect to the application of the apportionment formula, and other matters, which we deem it unnecessary to decide.

The judgments are reversed with directions to set aside the orders of the Kentucky Tax Commission in both cases.

All concur.