THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AN-GEL LUIS SERRANO PAGÁN, Defendant and Appellant.

No. 17244. Decided June 18, 1962.

---

*Benjamín Ortiz* and *Julio Suárez Garriga* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

PER CURIAM.

In this appeal there were consolidated four cases in the trial court for violations of the *Bolita* Act, 33 L.P.R.A. § 1247 *et seq.* Angel Luis Serrano Pagán was found guilty of three violations: two of § 10 of the Act which constitutes a felony; one of § 4 which is a misdemeanor. Providencia Rivera Cruz was found guilty of violating § 10.

I

Case G 59–67

The information filed in this case on January 26, 1959 charges that the appellant "on or about the period between February 22, 1958 and September 5, 1958, both dates inclusive . . . unlawfully, wilfully, and maliciously acted as director or manager of a *bolita* and *bolipul banca*, exercising during such period the functions of director and manager of the illegal games known as *bolita* and *bolipul*."

In support of his appeal the appellant assigns five errors: (1) "in permitting witness Daniel Soler Valle 'to testify on actions of the defendant engaging in the *bolita* and *bolipul* game on January 5, 1958' "; (2) "in permitting witness Daniel Soler Valle to testify in connection with a booklet in which he made notes, without showing that he could not recall the facts"; (3) "in permitting witness Daniel Soler Valle to

testify on the contents of a document which had not been offered in evidence"; (4) "in not permitting the witness for the defense, Guillermo García García, to testify on certain statements made by the defendant to the effect that the house where the *bolita* material was seized was not the defendant's residence"; and (5) "in charging the jury that the *bolita* game was a public nuisance."

■ 1. The question raised by the first error was objected to in the trial court and the judge in his instructions to the jury stated that "the court instructs you not to take it into consideration." This instruction saved the objection. Furthermore, what the testimony objected to tended to establish was the date the witness learned that the defendant was engaged in handling a *bolita banca*.

■ 2. The second error is also without merit. The witness proved that he did not recall the facts. Upon being questioned by the district attorney why he wanted to use his notes, he answered: "Mr. District Attorney, because there are many dates, many places, and different transactions and it would be difficult to remember all those dates." He also established that he had to do with a great number of persons. In moving for leave to refresh his memory and to use the notes, the witness established clearly that he did not recall the facts. See 32 L.P.R.A. § 2146.

■ 3. The witness noticed that the defendant had *bolita* material in his possession. He testified on that point, but the appellant maintains that he should present the material since "§ 24 of the Law of Evidence provides that there can be no evidence of the contents of a writing other than the writing itself, except, among other things, when the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice." But the fact is that the testimony was aimed at establishing that he saw *bolita* material in possession of the defendant. His observation is primary evidence. 2 WHARTON, *Criminal*

Evidence 501, § 607. See, also, *People* v. *Seda*, 82 P.R.R. 695 (1961), *aff'd*, 299 F.2d 576 (1st Cir. 1962), *cert. denied*, in 370 U.S. 904 (1962).

■ 4. The fourth error was not committed. A witness was asked regarding certain statements which the defendant made to him in the evening his house was searched and *bolita* material seized. The statements were in the sense that the defendant had told him that the house searched was not his residence. The trial court did not admit that testimony. Its ruling was correct. Those were self-serving statements. The statement was made at police headquarters after the defendant's arrest and after the lapse of a period of time as of the search. Obviously, the defendant had an opportunity to reflect and meditate on the situation in which he was involved. The spontaneity and contemporaneousness necessary to render the statements admissible were not present.

5. In his instructions to the jury, the judge said:

"The information was filed on the twenty-sixth day of January nineteen hundred and twenty-nine (*sic*). The Act or section allegedly violated in this case provides as follows: 'Any owner, attorney in fact, agent, person in charge, director or manager of the games prohibited by sections 1247 to 1257 of this title, shall be guilty of a felony.'

"Sections 1247 to 1257 of Title Thirty-three E (*sic*), specifically the former, reads: 'The games generally known as *bolita, bolipool,* clandestine combinations connected with the pools or *bancas* of the race tracks of Puerto Rico, and the clandestine lotteries, are hereby declared a public nuisance in the Commonwealth of Puerto Rico and in the territorial and maritime jurisdiction thereof.' You should therefore consider the first section I read to you in connection with the latter section I read. The first one refers to every owner, attorney in fact, agent, person in charge, director or manager of those games which the other section declares a public nuisance, and which includes *bolita* and *bolipool* game."

He then instructed them on the ingredients of the offense, but did not make reference to their characterization as a public nuisance.

■ What the judge merely did was to instruct the jury that the law considers the *bolita* game as a public nuisance. He did it in order to give them a complete picture of the law. The situation is not different from that of the crime against nature which the code labels "infamous," and in the instruction to the jury reference is made to that circumstance. It is a fact that the Legislative Assembly has declared the *bolita* game a public nuisance. The jury should be aware of that fact. This does not prejudice the defendant at all, since the court instructed them that the question for decision is whether the State established the facts charged, and to acquit the defendant if they have a reasonable doubt as to whether or not he committed them. That was the important thing.

## II

### Case M 58–652

The appellant was charged with a violation of § 4 of Act No. 220 of 1948 (Sess. Laws, p. 738). He charges the trial court with the commission of two errors: (1) "in denying the defendant's motion for trial of the case by a jury"; (2) "in denying a motion for peremptory acquittal made by the defense."

■ In *People* v. *Pérez*, 83 P.R.R. 221 (1961), we passed upon the question posed by the first error.

■ The second error assigned was not committed. The appellant filed a motion for peremptory acquittal. He alleged, in the first place, that the information charged him with having in his possession six lists containing *bolita* numbers, while the evidence established that he had only one in his possession, and that this constitutes a fatal variance between the information and the evidence. The frivolousness of this imputation does not merit discussion. The defendant

further alleges that there was also variance because the evidence showed that a sale was executed and he was charged with possession. But he was charged with possessing *bolita* lists and the evidence established such possession. That was sufficient.

### III
### Cases G 59–427 and 428

These cases are for violation of § 10 of the Act. One is against Angel Luis Serrano Pagán, the other against Providencia Rivera Cruz. Both arose from the same transaction.

Twelve errors are assigned. With the exception of the first, all of them are common in both appeals.

1. In part I of this opinion we considered the appeal taken by Serrano Pagán in another case of violation of § 10. The facts charged in that case as constituting the operation and handling of a *bolita banca* occurred during the period from February 22 to September 5, 1958. The facts charged in the information filed in the latter case occurred during the period from October 2 to 11 of the same year. The information in the former was filed on January 26, 1959. In the latter it was filed on June 2, 1959.

The defendant maintains that the operation and handling of a *bolita banca* is a continuing offense and that as such "it can not be split as it has been attempted in these cases in dividing the same into two informations, one for the period from February to September and the other for the period from October 2 to 12 *(sic)*. The prosecution had originally elected to charge for a continuing offense between February and September, and clearly it should not have power to split the informations into groups."

The operation of a *bolita banca* is not a continuing offense. The fact that the violation of a law may subsist for a more or less long period does not make the offense a con-

tinuing offense. In *People* v. *Burgos*, 75 P.R.R. 517 (1953), we stated what constitutes a continuing offense. To that end, we said:

██ "A continuing offense is a transaction or a series of acts set on foot by a single impulse and operated by an uninterrupted force no matter how long a time it may take. *State* v. *Johnson*, 194 S.E. 319, 322; *U.S.* v. *Midstate Co.*, 306 U.S. 161. According to the writings of Wharton, when the impulse is single only one indictment lies, no matter how long the action may continue, but if successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie. That writer further says that the test is to determine whether individual acts or the course of action which they constitute are prohibited; or if the former, then each act is punishable separately while if the latter, there can be but one penalty. 1 Wharton's *Criminal Law*, § 34, page 52; *Blackburger* v. *United States*, 284 U.S. 294, 302; 76 L. Ed. 306–308. It has also been said that 'continuing' means enduring, not terminated by a single act or fact; subsisting for a definite period or intended to cover or apply to successive, similar obligations or occurrences. And also that a continuing offense, therefore, is a breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences."

██ Clearly, to operate and conduct a *bolita banca* is not a continuing offense. *Commonwealth* v. *Grosso*, 162 A.2d 421 (Penn. 1960), *aff'd*, 165 A.2d 73 (1960). Each day it is operated it is a different offense. Using the language employed in *Burgos*, every day the *banca* is operated is a separate impulse. Let us take the case of a person who engages another to operate and conduct a *bolita banca* and the first day he assumes his duties he is caught in the act of receiving collections, counting the money, and delivering new material for the next day. Obviously, the offense has been committed notwithstanding it was precisely the first day he was caught. Because what the law prohibits is the individual act and not the course of action of such acts. It is clear

that there is nothing to prevent the State from charging the offense as occurring during a specified period of time, but in that case it could not afterwards charge that the offense was committed on a specific day comprised within the period for which he was originally charged. *People* v. *Bechtel*, 260 P.2d 31 (Cal. 1953); *People* v. *Krupnick*, 332 P.2d 720 (Cal. 1958).

2. Regarding the second error to the effect that it permitted witness Santos Rodríguez to testify that both defendants were husband and wife, we fail to see the bearing upon the decision of this appeal, apart from the fact that the defense did not object when the witness made the statement for the first time.

3. Witness Santos Rodríguez was an undercover agent. He was trusted by the defendants and the latter turned over to him the booklets used in the *bolita* game to be sold to the public. The witness admitted that he did not sell any of the booklets to the public. He paid for them out of the money given him by his superiors. He pretended having made collections.

 The appellant alleges that these facts present a case of entrapment. The appellant further alleged that "the judge who presided at the trial of the case said that in another case he had acquitted the defendant where the *bolita* listings had been prepared by the undercover agent and the money had been received from the police, and that if that is the case and that is the only evidence of the offense, the court believes that there is no evidence of the offense." (Page 31.)

Regarding the defense of entrapment, the evidence discloses that the defendants delivered *bolita* material to the witness of their own will and not because the witness urged them to operate the *banca*. This statement was made by the presiding judge himself at p. 32 of the Transcript of the Evidence:

"But in this case the situation is entirely different because there is evidence that the defendants engaged this agent to sell *bolita* and *bolipul*, and they then delivered to him, at least on two occasions, *bolipul* booklets which were not prepared by the police officer nor are the product of his imagination, but printed *bolipul* booklets which, as testified by the witness for the prosecution, were in the hands of the defendants who delivered them to him for sale in the belief that this undercover agent was a *bolitero*. They did not know that he was a police officer. The act of the sale is not in question here and it is not necessary that a sale be executed in order to commit the offense. The mere distribution of the *bolipul* booklets is an act proper of the direction and management of a *bolita banca*..."

We repeat here what we said in *Seda*, at p. 705:

"There is no doubt that the undercover man is a necessary weapon for investigating certain offenses which because of their essential clandestine characteristic would remain unpunished if said method were not used. It is only required that the officer's action does not create or lead to an entrapment although it might facilitate the commission of the offense. *People* v. *Pérez*, 80 P.R.R. 289 (1958); *Cook* v. *United States*, 193 F.2d 373 (D.C. 1951); *Sorrells* v. *United States*, 287 U.S. 435 (1932); *United States* v. *Sherman*, 200 F.2d 880 (2 C.C.A. 1952); *cf. United States* v. *Masciale*, 236 F.2d 601 (2 C.C.A. 1956); *Entrapment to commit offense with respect to gambling or lotteries*, 31 A.L.R.2d 1212 (1953). Rather lightly the appellant seems to insinuate that the officer led him to an entrapment in order to arrest him. The facts do not justify this conclusion, but rather show, in view of the assiduity of the violations, that the defendant was a regular fixer in the illegal game of the *bolita*."

■ Furthermore, as we explained in *People* v. *Pérez*, the offense charged against the defendant does not require a specific intention because the offense is of public concern.

4. The appellants maintain that it was error to permit the district attorney to make reference in his argument to the jury to the manner in which the *bolita* game is operated, "since there was no evidence on that point."

■ The appellants are not right. In addition to the fact that the operation of the *bolita* game is of public knowledge, the evidence establishes by the explanation made by the agent the manner in which this game is operated.

■ 5. The fifth error assigned is to the effect that the judge stated that a witness had explained adequately and in a simple manner how the *bolita* game is operated, and that he had therefore invaded the function of the jury which is the one called upon to decide whether the explanation was adequate or not. The error was not committed. The judge did not invade the function of the jury. He explained it that way in one of his instructions:

"Yet, colleague Suárez Garriga interrupted the district attorney in order to object to the district attorney making reference to that part of the witness' testimony. The court had to decide the question by agreeing with the district attorney, because according to the notes of the court, the notes which the judge took down agree with the transcript of the record read by colleague Suárez Garriga which the stenographer handed to him; they agree fully in almost all particulars. The court was of the opinion and decided that the manner in which the *bolita* game is operated in Puerto Rico had been described. Of course, the jury is the one called upon to weigh the witness' testimony and to give the credit which in the opinion of the jury the witness deserves. The court can not interfere with that. That is an exclusive function of the jury. That does not mean what the judge has said, that the jury must believe that the manner in which the *bolita* game is operated has been established. The court is explaining what the witness testified, clarifying that. Now then, the weighing of the witness' testimony is up to the jury and it is the exclusive function of the jury, who are the ones called upon to determine whether they are duly instructed, satisfied with the witness' testimony as to the manner in which the *bolita* is operated, and whether you believe it or not, is a question for you alone and not for the judge."

■ 6. In his argument the district attorney erroneously made reference to the fact that the defendant had been pre-

viously convicted of a *bolita* offense. The appellant maintains that, notwithstanding the judge's instruction not to take such fact into consideration, such instruction did not cure or remove the error which was highly prejudicial to the defendant. He instructed the jury and in our opinion that was sufficient:

"The district attorney said that. The court instructs you not to take into consideration at all any statement made by the district attorney or his statement on a previous conviction of the defendant for the same offense, since he is being prosecuted for the facts alleged in the information which is now before the court and not for any other act bearing no relation to these facts. You should not take into consideration at all what the district attorney has said, that the defendant was convicted of another offense of this nature. You are not to take into consideration at all that statement of the district attorney. You should therefore decide this case on the basis of the evidence heard in connection with the specific acts with which he is charged in this information only."

7. The seventh error has already been discussed. The judge did not err in instructing the jury that the *bolita* is a public nuisance.

8, 9. We will consider the eighth and ninth errors jointly. The eighth reads as follows: "The trial judge erred in charging the jury that it was not necessary for the State to establish each and all of the facts alleged in the information," and the ninth "the trial court erred in charging the jury that although the evidence had not established that any sale had been executed, as a question of law the court charged the jury that in order to establish the offense it was not necessary to prove that a sale had been executed."

The information charged the defendants that "they unlawfully, wilfully, and maliciously performed acts proper of managers, bankers, and directors of the illegal games known as *bolita* and *bolipul*, such as delivering *bolipul* booklets for sale and to receive amounts of money, the proceeds of the sales of the said booklets of the illegal games known as *bolita* and *bolipul*."

█ It may be observed that the information, after setting forth that the appellants acted as managers, gives certain examples of the acts performed by them, and to that effect it reads "such as," without the State being under the obligation to establish all the acts specified. Only one is enough if such act constitutes the management or operation of a *banca*. The specific act which was established by the evidence constitutes an act of management, the distribution of *bolita* material. In this case it was to an agent, and the fact that he did not sell it to the public does not affect the defendants' responsibility.

10. The tenth error is a modality of the question which we already decided in the *Seda* case on the actions of an undercover agent.

█ 11. The eleventh error charges that the trial judge "failed to instruct the jury that in order to find the defendants guilty the jury should have concluded that they acted in common and jointly."

We copy the trial judge's instructions on this question:

"There are two defendants here, that is, two defendants are involved, and I must instruct you that according to § 36 of the Penal Code all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, are principals or authors in the crime committed. And when two or more persons join in order to commit a criminal act, whether by physical violation of one or of all of them, acting individually or jointly, each individual whose will contributed to the commission of the criminal act in the eyes of the law is as responsible for all the consequences of the act committed as if he alone had committed it. And in the case of two or more defendants, I must instruct you, as a question of law, that you are under no obligation to bring the same verdict as respects both defendants. You decide in accordance with the weighing of the evidence as to each defendant in particular. You will therefore have two models of

verdict. You will make the weighing and the determination as to the innocence or guilt of each defendant separately.

. . . . . . . . .

"If from the evidence heard the gentlemen of the jury believe that it has been established to your satisfaction, beyond a reasonable doubt, that defendants Ángel Luis Serrano Pagán, known as Chucho, and Providencia Rivera Cruz, known as Provi, acting jointly and in concert, during the period from October 2, 1958 to October 11, 1958, both dates inclusive, in the ward of La Perla of San Juan, Puerto Rico, unlawfully, wilfully, and maliciously performed acts proper of managers, directors, or bankers of the illegal games of *bolita* and *bolipul,* distributing *bolipul* booklets for sale, and/or received money, the proceeds of the sale of *bolita* or *bolipul,* in that case it is your duty to bring a verdict of guilty against both defendants, or against either of them regarding whom you believe that those facts have been established to your satisfaction, a verdict of guilty, I repeat, of violation of § 10 of Act No. 220 of 1948, known as *Bolita* Act, as subsequently amended."

That instruction is consonant with the view stated by this Court in *People* v. *Márquez,* 45 P.R.R. 322, 329 (1933), in which we stated:

"Under our present system, all persons concerned in the commission of a crime (section 36 of the Penal Code) and who directly commit the act constituting the offense, or who, not being present, have advised and encouraged its commission, and all persons advising or encouraging minors under the age of fourteen years, lunatics or idiots, to commit any crime, or who by means of fraud, contrivance, or force, occasion the drunkenness of another person for the purpose of causing him to commit any crime, are principals in any crime so committed. Said system designátes as accessories those who under the former system were known as '*encubridores.*' The common purpose or concerted action to which the defense refers, is only required for certain crimes such as that of conspiracy.

"Moreover, if the defendants thought that the information was not sufficiently specific in failing to state the part that each of them took in the commission of the crime, they should have demanded a bill of particulars or request that the information

be made more specific, but they did not do so. Defects in the information are not now under discussion; only errors in the instructions."

The trial judge was therefore correct in his instructions.

12. The twelfth error is based on the premise that there was no evidence on the manner in which the *bolita* is operated. But we have already seen that there was evidence on that point. And if there had been none, the error would be frivolous.

None of the errors assigned were committed.

---

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

ORDER

On Motion for Reconsideration

Having considered all the surrounding circumstances in the cases G–59–67 (Felony) and G–59–427 and 428 (Felony) of the Superior Court, San Juan Part, which were consolidated and decided by a per curiam decision and judgment of June 18, 1962 affirming the judgments of the trial court, we hereby modify our judgment in order that the sentences imposed on Angel Luis Serrano Pagán in the aforesaid cases be served concurrently. The sentence imposed in case M–58–652 will be served consecutively. The other questions raised in the motion for reconsideration will be dismissed. Judgment will be entered accordingly.

It was so agreed by the Court as witnesses the signature of the Chief Justice. Mr. Justice Blanco Lugo concurs in the result.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:

(s) IGNACIO RIVERA
*General Secretary*

674

MR. JUSTICE BLANCO LUGO, concurring.

I concur in the result announced by this Court in the order of the motion for reconsideration. I wish to state expressly that in my opinion, the offense punished by § 10 of Act No. 220 of May 15, 1948, 33 L.P.R.A. § 1256—to be the owner, attorney in fact, agent, person in charge, director or manager of the games of *bolita, bolipul,* clandestine combinations related with the pools or bancas of the racing tracks of Puerto Rico and clandestine lotteries—is one of a continuous nature, and that therefore, the filing of an information on January 26, 1959 precluded the prosecution of the defendant separately and as a different offense for facts occurred prior to that date. See *Thomas* v. *District of Columbia,* 161 A.2d 52 (1960); *Sherman* v. *State,* 77 So.2d 495 (Ala. 1954); *Usrey* v. *State,* 56 So.2d 790 (Ala. 1952); *State* v. *Johnson,* 194 S.E. 319 (N.C. 1937); *People* v. *Beverly,* 225 N.W. 481 (Mich. 1929); *State* v. *Roberts,* 93 So. 95 (La. 1922); *Ex parte Snow,* 120 U.S. 273, 284 (1886); and particularly *State* v. *Mills,* 86 So.2d 895, 903 (La. 1956), in which it is said that "defendants are charged with gambling as a business which by its very nature is a continuing transaction."